Norman M. **GARLAND**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**MOBIL OIL CORPORATION**, a New York corporation, Defendant.

No. 69 C 2165.

United States District Court, N. D. Illinois, E. D.

March 28, 1972.

Robert L. Schlossberg, Lieberman, Levy & Baron, Chicago, Ill., for plaintiff.

William B. Davenport, Peter A. Flynn, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

This matter arises on cross-motions for partial summary judgment.[1] Garland, a gasoline credit card customer of

---

1. Neither party's motion for summary judgment seeks determination of the class action issue. Neither does plaintiff at this time request a determination of damages.

defendant Mobil Oil ("Mobil") alleges that various actions by Mobil violated the Truth in Lending Act, 15 U.S.C. §§ 1601–65 (1970) (hereinafter "Act") and that other actions by it violated the Illinois Uniform Deceptive Trade Practices Act, Ill.Rev.Stat., ch. 121½, §§ 311–17 (1969) (hereinafter "Uniform Act").[2] Garland sues on behalf of himself and all other similarly situated holders of Mobil credit cards for damages and equitable relief.

On the Truth in Lending Act issue, the Court finds for defendant and dismisses Count 1 of the complaint. However, the Court holds that defendant has violated the Illinois Uniform Deceptive Trade Practices Act and directs that a pretrial conference be held for discussion of further proceedings on the issue of relief under Count 2 of the complaint.

The basic facts are stipulated. Garland, a Mobil credit card holder since January 1967, purchased products from defendant's dealers during the period July 11, 1969[3] to November 10, 1969 and charged the purchases on his credit card. He was billed by Mobil in August, September, October and November of 1969.

Like the credit card application and the credit card, each monthly statement indicated that "payment [was] due on receipt of this statement." Each monthly statement also contained the legend that "past due amounts may incur a monthly service charge at 1½%."

These two notices become significant in light of Mobil's change of procedures for collection of delinquent accounts. Prior to July 11, 1969, Mobil imposed a service charge of 1½% upon a credit card customer in each consecutive month in which the balance owed by the customer was 60 days past due and amounted to $10.00 or more. On July 11, 1969, Mobil temporarily discontinued the levy of all late payment charges on its cardholder accounts and decided to refund all such charges levied between July 1 and July 11.[4] From July 11 to August 22, Mobil levied no charges of any kind on cardholder accounts.

On August 22, 1969, Mobil initiated a practice of imposing a single "late payment charge" upon a credit customer who owed $25.00 or more for over 90 days. The delinquent customer's credit was terminated and a request made for the return of his credit card when this late payment charge was imposed. No notification was issued to customers regarding this change in credit practice. An additional unpublicized change was effected on February 5, 1970, from which date Mobil discontinued the practice of refunding late charges upon the reinstatement of credit which had been terminated. Finally, on October 1, 1970, Mobil revised its credit card system and, with notice, began assessing a finance charge of stated percentages on outstanding minimum monthly balances.

Count 1 of Garland's amended complaint asserts that Mobil has extended to Garland and others similarly situated "consumer credit" under an "open end credit plan," which terms are defined in the Truth in Lending Act,[5] without disclosing to Garland or others the information required by the Act to be disclosed in periodic open end billing statements. 15 U.S.C. § 1637. The Act's disclosure requirements are supplemented by Federal Reserve Regulation Z (hereinafter "Reg. Z")[6] promulgated thereunder.[7]

2. This case appears to be one of first impression under both Acts.

3. The Truth in Lending Act became effective on July 1, 1969. 15 U.S.C. § 1601 n. (1970).

4. This policy change apparently was the result of a July 10 meeting (at Mobil's request) between Mobil officials and representatives of the Federal Reserve Board and the Federal Trade Commission.

5. 15 U.S.C. § 1602(e), (h) and (i) (1970).

6. 12 C.F.R. § 226.

7. 15 U.S.C. § 1604 (1970).

Count 2 alleges that Mobil violated the Illinois Uniform Deceptive Trade Practices Act, *supra*, by maintaining the legend on its bills that past due accounts would incur a service charge, when in fact no service charge was being imposed for past due balances less than $25.00 and no *monthly* service charge for past due balances of $25.00 or more from August 22, 1969 to October 1, 1970.

Turning first to the Truth in Lending Act, this is a disclosure statute which seeks to promote the informed use of credit by requiring disclosure of information concerning the cost of credit and the terms on which credit will be extended. 15 U.S.C. § 1601.[8] The Act and Reg. Z apply only to persons who in the ordinary course of business regularly extend credit for which the payment of a finance charge is required. 15 U.S.C. § 1602(f). Each of these creditors is required to give clear and conspicuous information "to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed. . . ." 15 U.S.C. § 1631(a).

■ Thus, a creditor under the Act is one who regularly extends credit for which the payment of a finance charge is or may be required. If a creditor regularly extends such credit, then he must make the disclosures referred to in 15 U.S.C. § 1631(a) to all of his credit customers under the particular credit plan, whether or not a finance charge is actually imposed on each customer under the plan.[9]

■ Applying the terms of the Act to the facts at hand, Mobil did not impose a finance charge from July 11, 1969 to August 22, 1969. From the latter date to October 1, 1970, it imposed a "late payment charge," which is not deemed to be a "finance charge."[10] Accordingly, during this period, Mobil was not a creditor covered by the Act, and thus it was not required to disclose the information described in 15 U.S.C. §§ 1631–41. The warning contained in Mobil's monthly statements that late payment might result in the imposition of a monthly service charge does not alter Mobil's status under the Act.

Count 2 of the amended complaint alleges that Mobil violated the Illinois Uniform Deceptive Trade Practices Act, Ill.Rev.Stat., ch. 121½, §§ 311–17 (1969), by maintaining the following legend on its monthly statements from July 11, 1969 to October 1, 1970: "past due amounts may incur a monthly service charge at 1½%." Garland contends that this threat of a monthly service charge constituted a deceptive trade practice because Mobil did not impose any service charge on past due accounts from July 11, 1969 to August 22, 1969, and from August 22, 1969 to October 1, 1970, it imposed only a one-time late payment charge upon those customers whose 90-day past due balances were $25.00 or more.

Section 2 of the Uniform Act (Ill. Rev.Stat., ch. 121½, § 312) proscribes eleven specifically defined deceptive trade practices. The twelfth subsection prohibits "any other conduct which simi-

---

8. For the legislative history of the Act see 2 U.S. Code Cong. & Admin.News, p. 1962 (1968).

9. Reg. Z, § 226.2(m) and (k), has a similar requirement.

10. Reg. Z, § 226.4(c):
"A late payment, delinquency, default, reinstatement or other such charge *is* not a finance charge if imposed for actual unanticipated late payment, delinquency, default or other such occurrence."

*See also*, Reg. Z, § 226.2(r) (definition of open end credit). One interpretation of Reg. Z (April 22, 1969) holds that service charges for late payment are "finance charges," but only where the vendor does not consider the account in default and continues to extend credit. Mobil made a late payment charge but also terminated accounts which owed more than $25 for over 90 days. The service charge interpretation is found in 12 C.F. R. § 226.401.

larly creates a likelihood of confusion or of misunderstanding."

■ Mobil argues that the Uniform Act cannot apply here because it was not intended to be applied to debtor-creditor relations and subsection 2(12), *supra,* simply means that conduct similar to the eleven specific deceptive trade practices was to be covered by the Uniform Act.

Neither legislative history nor logic supports Mobil's position on this point. There is nothing in the Uniform Act itself which limits 2(12) to practices in the same general category of the eleven which are specifically defined. Indeed, the prefatory notes of both Judge Tone and the National Conference of Commissioners on Uniform State Laws indicate that 2(12) was designed to permit the courts to block out new kinds of deceptive trade practices.[11] See also, Dole, Merchant and Consumer Protection: The Uniform Deceptive Trade Practices Act, 76 Yale L.J. 485, 493, 498 (1967). Only an artificially narrow construction would hold that the statute applies broadly to practices utilized to effect a sale, but cannot reach the practices utilized in its financing.

■ Mobil next argues that even if the Uniform Act applies, it contains an express exemption covering Mobil's conduct here in issue, to-wit: Section 4(1) (Ill.Rev.Stat. ch. 121½, § 314(1)) of the Uniform Act, which states that the Uniform Act does not apply to "conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency." Mobil's theory is that the alteration of its collection practices to comply with federal law caused its pre-existing legend threatening a monthly service charge on past due amounts to be mis-

leading. But Mobil's continued use of the legend was not mandated by the Truth in Lending Act or Reg. Z. Indeed, Mobil had an obligation to alter its legend to accurately describe its revised collection practices. The exemption of Section 4(1) of the Uniform Act does not apply.

■ Mobil finally claims that the monthly service charge legend was not misleading. Given Mobil's collection practices between July 11, 1969 and October 1, 1970, this position is untenable. The legend clearly implied that a service charge would be imposed on all past due amounts. In fact, as shown by the facts set out above, this was not an accurate description of Mobil's collection practices in the period in question and it created the "likelihood of confusion or of misunderstanding" proscribed by section 2(12) of the Uniform Act. Although it seems highly doubtful that significant harm was done here, the vice is that such a legend is calculated to move the credulous and conscientious to pay their bills when due, whereas the incredulous and dilatory, and those in the know, could receive extended credit if the legend is systematically used but not enforced.

Garland originally requested an injunction against Mobil's continued use of the monthly service charge legend. However, Mobil's reinstatement of its monthly service charge effective October 1, 1970 reestablished the accuracy of its legend and, at this juncture, Garland suggested to the Court that his request for an injunction was moot. He later reasserted his claim for equitable relief and the parties briefed the issue. However, it need not be decided now; it can be dealt with along with the remainder of the relief issue under Count 2.

11. Ill.Rev.Stat., ch. 121½, § 312 (Supp. 1972). A logical reading of this subsection clearly reveals that "similarly" modifies "create" and not "conduct."