STATE of Iowa, ex rel. Thomas J. MIL-
LER, Attorney General, Appellant,

v.

NATIONAL FARMERS
ORGANIZATION,
Appellee.

No. 62450.

Supreme Court of Iowa.

May 30, 1979.

Thomas J. Miller, Atty. Gen., and Douglas
R. Carlson, Asst. Atty. Gen., for appellant.

Lawrence F. Scalise and Thomas J. Levis,
of Scalise, Scism, Gentry, Brick & Brick,
Des Moines, for appellee.

Considered by LeGRAND, P. J., and
REES, UHLENHOPP, McCORMICK, and
McGIVERIN, JJ.

McCORMICK, Justice.

The question here is whether the trial
court erred in holding that the State could
not obtain an injunction under the Iowa
Consumer Credit Code to halt debt collec-
tion practices allegedly used by the Nation-
al Farmers Organization in an effort to
collect back dues and assessments. Al-
though we believe the trial court erred in
holding that the ICCC does not apply to
nonprofit corporations, we affirm the court
on the ground that the back dues and as-
sessments are not debts affected by the
relevant provisions of the ICCC.

The attorney general has authority to
seek injunctions to restrain debt collection
practices proscribed by the ICCC. *See*
§§ 537.6103, 537.6110, The Code. Prohibit-
ed practices are listed in section 537.7103,
article seven. The present injunctive action
was initiated against the NFO pursuant to
these provisions. The petition averred that
the NFO was violating section 537.7103
through representations and activities of
agents seeking to collect back dues and
assessments allegedly owed under member-
ship agreements entered by Iowa residents
years earlier.

In its answer, the NFO denied it engaged
in prohibited practices and also denied the
applicability of the ICCC to its efforts to
collect the debts. The NFO subsequently
presented the issue of the applicability of
the ICCC to the trial court by motion to
adjudicate law points pursuant to Iowa
R.Civ.P. 105.

The form of NFO membership agreement under which the debts allegedly arose was before the court as part of the State's petition. The NFO asserted the ICCC was inapplicable because article seven proscribes collection practices only relating to debts resulting from the granting of credit, and the debts involved here were not based on credit transactions. Passing this issue, the trial court sustained the motion to adjudicate law points on the ground that the ICCC does not apply to nonprofit corporations.

In this appeal, the NFO seeks to sustain the adjudication on both grounds.

I. We believe the ground relied on by the trial court is untenable. Examination of the ICCC shows it regulates debt collection practices without any limitation attributable to the nature of the entity engaging in them. A debt collector is a "person" who attempts to collect debts. § 537.7102(3). "Person" includes an "organization." § 537.1301(32)(b). "Organization" means a "corporation, government or governmental subdivision or agency, trust, estate, co-operative, or association." § 537.1301(30).

No distinction is made in the statute between profit and nonprofit entities. The legislative purpose would not be served by a distinction of that kind. If a debt collection practice is wrong when engaged in by a profit-making entity, it is also wrong when engaged in by a nonprofit entity. It is reasonable to believe the legislature intended the consumer to be protected from proscribed collection practices in both situations. No basis appears in the statute for a contrary conclusion.

■ We hold that article seven of the ICCC applies to nonprofit as well as profit organizations.

■ II. When the reason given by a trial court for its adjudication is erroneous, the adjudication will nevertheless be sustained if a separate ground, properly urged, is correct. *Hawkins/Korshoj v. State Board of Regents*, 255 N.W.2d 124, 127 (Iowa 1977). Therefore we consider the alternative ground asserted by the NFO.

Its merits are also answered by statutory definitions.

"Debt collection" under article seven means "an action, conduct or practice in soliciting debts for collection or in the collection or attempted collection of a debt." § 537.7102(2). In its ordinary meaning a "debt" is a sum charged which is due and owing, a fixed obligation as opposed to something payable on a contingency. *E. g., United Missouri Bank of Kansas City v. Danforth*, 394 F.Supp. 774 (W.D.Mo.1975). However, "debt" has a narrower meaning under section 537.7102(1) of article seven:

> "Debt" means an actual or alleged obligation arising out of a consumer credit transaction, or a transaction which would have been a consumer credit transaction either if a finance charge was made, if the obligation was not payable in installments, if a lease was for a term of four months or less, or if a lease was of an interest in land.

Hence article seven applies only to debts which arise from consumer credit transactions, subject to the stated exception.

■ The dispositive issue is whether a debt for dues and assessments under the NFO membership agreement arises from such a transaction.

A "consumer credit transaction" includes, insofar as relevant here, a "consumer credit sale." § 537.1301(12). A "consumer credit sale", with exceptions not applicable here, is

> a sale of goods, services, or an interest in land in which all of the following are applicable:
>
> (1) Credit is granted either pursuant to a seller credit card or by a seller who regularly engages as a seller in credit transactions of the same kind.
>
> (2) The buyer is a person other than an organization.
>
> (3) The goods, services or interest in land are purchased primarily for a personal, family, household or agricultural purpose.
>
> (4) Either the debt is payable in installments or a finance charge is made.

(5) With respect to a sale of goods or services, the amount financed does not exceed thirty-five thousand dollars.

§ 537.1301(13)(a).

The definition of "debt" in section 537.-7102(1) omits the fourth requirement, and the NFO does not dispute the presence of the second, third and fifth elements. The controversy is whether the alleged debts arose from the granting of credit as required by the first element.

"Credit" is defined in section 537.-1301(16):

"Credit" means the right granted by a person extending credit to a person to defer payment of debt, to incur debt and defer its payment, or to purchase property or services and defer payment therefor.

The NFO membership agreement must be examined to determine whether credit was granted for payment of NFO dues and assessments. The parties' arguments rest wholly on the language of the agreement. Therefore the issues of interpretation and construction of the agreement are both matters which we may decide. *See Connie's Construction Co. v. Fireman's Fund Insurance Company*, 227 N.W.2d 207, 210 (Iowa 1975).

The relevant provisions of the membership agreement are as follows:

Sec. 1—The membership dues of the N.F.O. shall be $5.00 per year, or such amount as may hereafter be established by the N.F.O., which shall be due and payable to the Treasurer of the member's county organization, at the date of making application for membership in the N.F.O. and yearly thereafter, as prescribed by the By-Laws of the organization.

Sec. 2—A member shall be assessed $20.00 at the time of signing this contract and yearly thereafter by the N.F.O., which shall be used as directed by the Board of Directors to defray expenses incurred in carrying out a program of effectuating collective bargaining with the processor, and other activities in the best interest of the membership of the organization to be determined by the Board of Directors of the N.F.O.

Nothing in the agreement allows the member to defer payment of dues. They are "due and payable" at the date of making application and annually thereafter. Nor is any provision made for deferring payment of the annual assessment.

Delay by the NFO in attempting to collect past dues and assessments does not establish that credit was granted; it only demonstrates forbearance in collecting sums which, if owed, were due and payable at the time the debts were incurred. The agreement shows NFO membership was not a "credit" transaction under the ICCC definitions.

Therefore the trial court's adjudication that article seven does not apply in this case is correct.

AFFIRMED.