ALMON, Justice.
Harland D. Simpson and Leigh Ann Young (“the homeowners”) appeal from a judgment of the Dale Circuit Court holding that C.J.V. Construction & Consulting, Inc. (“C.J.V.”), was not a “creditor” as that term is defined in the language of the Truth-in-Lending Aet, 15 U.S.C. § 1601 et seq. The only issue on *364 appeal is whether C.J.V. does meet that definition and is, therefore, a creditor for purposes of the application of the Truth-in-Lending Act.
The homeowners, a married couple, hired C.J.V. to remodel their personal residence. C.J.V. typically conducts its business by submitting a proposed cost and billing customers periodically as various stages of the project are completed. C.J.V. accomplishes this periodic billing by sending its customer an invoice showing the amount due and providing that if the invoice is not paid within 30 days it will charge the customer a “late pay penalty” of 1.5% per month for the overdue balance.
Over the course of the remodeling project, the homeowners and C.J.V. executed several change orders, which raised the price of the entire project from $60,000 to over $110,000. During this time, C.J.V. issued 13 invoices, which were timely paid. At the completion of the project, C.J.V. sent a final invoice claiming $25,098 in “cost overruns.” The homeowners did not pay this invoice, and C.J.V. applied the 1.5% “late pay penalty” to the balance; these homeowners were the only customers of C.J.V. ever to incur this penalty.
Shortly after this nonpayment of the invoice, C.J.V. filed a lawsuit against the homeowners, alleging breach of contract. The homeowners filed a counterclaim seeking relief for violations of the Truth-in-Lending Act. The circuit court held a hearing on the issue whether C.J.V. was a “creditor” within the meaning of the Act; it determined that C.J.V. was not a creditor, because, it said, this “transaction carried with it no finance charge.” The homeowners appealed.
To be a creditor for purposes of application of the Truth-in-Lending Act, an entity must regularly extend consumer credit; that requirement means that the entity allows payment of debts to be deferred through four or more installments or that it requires payment of a finance charge. 15 U.S.C. § 1602(f). We hold that C.J.V.’s policy of supplying its customers with periodic invoices and requiring progress payments is not the extension of credit. In Sealey v. Boulevard Construction Co., 70 Ohio App.2d 277, 437 N.E.2d 305 (1980), the Ohio Court of Appeals held that such an arrangement was not an extension of credit, and we find that reasoning, reflected below, to be persuasive. Credit is defined in the Code of Federal Regulations as the right to “defer payment of a debt.” 12 C.F.R. § 226.2(a)(14). According to this definition, C.J.V.’s practice of requiring progress payments did not involve credit, because under this practice there was no “debt” until the invoice was issued. The homeowners were paying C.J.V. for completing various stages of the project, rather than making installment payments on the total amount of the contract. The homeowners argue that the periodic invoices required them to make installment payments on one large debt, but this is not the case. The balance due reflected on the invoices was due only when the invoice was sent, not at the beginning of the project as part of one large debt.
In Staples v. Jenkins Builders, Inc., 447 So.2d 779 (Ala.Civ.App.1984), the Court of Civil Appeals addressed a situation similar to the one here. Jenkins Builders sent Staples an invoice on his open account, stating that the balance was due in 30 days and that a 1.5% service charge would be charged on the unpaid balance. Jenkins, supra, at 781. The Court of Civil Appeals held that this transaction was not a credit sale, because the open account was closed on the date of the invoice and the interest was charged only on the delinquent amount. Jenkins, supra, at 782. This case does not involve an open account, but the amount stated on the invoice was an amount due at that time, just as the amount was due at the time of the invoice in Jenkins. In both cases, the “late pay penalty” or “service charge” did not apply until 30 days after the amount became due. There was no “right to defer payment,” and, hence, no “credit” was extended, because the amount was due upon the sending of the invoice.
In Hahn v. Hank’s Ambulance Service, Inc., 787 F.2d 543 (11th Cir.1986), the United States Court of Appeals for the Eleventh Circuit held that the defendant was not extending credit when it charged a bookkeeping fee to all its customers who did not pay at *365 the time services were rendered. Id. at 544. The Court said the fee was not an extension of credit, because the defendant Hank’s Ambulance Service did not grant the right to defer payment, but “simply assesse[d] a charge in light of the customer’s failure to pay the company at the time the service [was] performed, in accordance with company policy.” Id. The late-pay penalty in this case was not in the form of a one-time flat fee, but, using the criteria set forth by the Eleventh Circuit, we conclude that it was not an extension of credit. The homeowners failed to pay C.J.V. when the money became due, and this was a charge assessed in light of that failure.
In addition to this caselaw precedent, federal law, 12 C.F.R. § 226.4(c)(2), excludes from the definition of “finance charge” any “charges for unanticipated late payment”. Id. In this situation, the “late pay penalty” definitely falls into this category. C.J.V. certainly did not anticipate collecting this “late pay penalty,” and in fact had never done so before this project. Even if C.J.V. had collected the “late pay penalty” from prior customers, it still may not have been “anticipated,” as that term is used in this area of the law. The United States Court of Appeals for the Seventh Circuit held that a business may expect some delinquent accounts and anticipate receipt of revenue from late payment charges, but the late payment could still be unanticipated if it was not anticipated in any 'particular case. Bright v. Ball Memorial Hospital Ass’n, Inc., 616 F.2d 328, 335 (7th Cir.1980). The key factor for determining whether a late payment is unanticipated is whether the “creditor” considers the account to be in default. Id. C.J.V. clearly considered the homeowners to be in default on their account, even calling the charge a “late pay penalty”.
The United States District Court for the Northern District of Illinois espoused this principle in Garland v. Mobil Oil Corp., 340 F.Supp. 1095 (N.D.Ill.1972). There, Mobil Oil sent out credit card statements declaring that payment of the full balance was due upon receipt of the bill and that past due amounts would incur a 1.5% service charge, or a flat fee service charge. Id. at 1097. The court in Garland held that this service charge was not a finance charge, because Mobil Oil treated the account as if it was in default and did not continue to extend credit to a cardholder with a past due balance. Id. at 1098. This situation is different from that in Kroll v. Cities Service Oil Co., 352 F.Supp. 357 (N.D.Ill.1972), where the court held that a late fee was a finance charge because the seller, Cities Service, did not consider the account to be in default; customers could continue to charge even if they had “past due” amounts. Id. at 361.
For all of the foregoing reasons, we hold that the circuit court correctly determined that C.J.V. did not regularly extend credit and was therefore not a “creditor,” within the meaning of that term as it is used in the Truth-in-Lending Act. The judgment of the circuit court is due to be affirmed.
AFFIRMED.
HOOPER, C.J., and HOUSTON, COOK, and SEE, JJ., concur.