# IN THE SUPREME COURT OF IOWA

No. 37 / 05-0859

Filed February 22, 2008

**TOBIE ANDERSON,**

    Appellant,

vs.

**NEXTEL PARTNERS, INC.,**

    Appellee.

---

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Consumer appeals district court ruling that the Iowa Consumer Credit Code did not apply to cellular service agreement. **AFFIRMED.**

Ray Johnson of Johnson Law Firm, West Des Moines, for appellant.

Mark McCormick and Michael R. Reck of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellee.

**HECHT, Justice.**

A consumer lost her cellular telephone and cancelled the contract with the company that provided her phone service. When the provider sued the customer to collect early termination fees, the customer claimed the collection action violated the Iowa Consumer Credit Code (ICCC). The district court concluded the customer's subscriber agreement did not result in an extension of credit under the ICCC. We agree, and therefore affirm the district court's ruling.

### I.       Background Facts and Proceedings.

In December 2002, Tobie Anderson purchased two cell phones from and entered into a cell phone subscriber agreement with Nextel Partners, Inc. Although the agreement established a one-year term, the agreement permitted the parties to terminate the agreement during that term.[1] Anderson initialed a "new customer checklist" affirming that she had received from a Nextel representative an explanation of "early termination penalties," and acknowledging her understanding that she would be liable to pay a cancellation fee of two hundred dollars for each phone upon termination of the agreement prior to the expiration of the one-year term.

Although Anderson paid for the two phones when she signed the contract, the agreement provided that "[i]f the parties have agreed that payments are to be made in installments, or on credit as indicated on the front of this Agreement, Customer shall be responsible for paying amounts due as agreed to in this Agreement." There is no indication on the front of the service agreement that the parties agreed Anderson would make monthly payments in installments or on credit. The agreement also noted it was made expressly "contingent upon [Nextel's] approval of Customer's

---

[1]Termination of the agreement could be accomplished "with thirty (30) days advance written notice to the other party."

credit application," and disclosed that Nextel would rely upon the information in the subscriber agreement "in making a decision to extend credit with regard to [s]ervices."

Anderson thereafter received and paid each month a bill consisting of Nextel's minimum access fee and additional charges when her use of the phone exceeded the time allowed under the service plan she had purchased. In July 2003, Anderson lost one of the cell phones subject to the subscriber agreement, and notified Nextel of her decision to cancel the contract. She received a bill from Nextel for $532.04, including cancellation fees.

Anderson refused to pay the bill, claiming a Nextel sales agent had told her at the time of sale that she could be held responsible for only four months of a cellular service contract under Iowa law.[2] Noting that she had paid Nextel's bills for nine months, Anderson objected to the cancellation charges. Anderson further claimed the Nextel agent showed her at the time of sale what he represented was a copy of an e-mail message from the Iowa Attorney General's office attesting that early termination fees are illegal.

Nextel turned Anderson's account over to Lamont, Hanley & Associates, Inc. for collection. Anderson thereafter filed a petition against Nextel and Lamont alleging, in relevant part, the cancellation fees are illegal under the Iowa Consumer Credit Code, Iowa Code chapter 537 (2002), and the Iowa Debt Collection Practices Act (IDCPA), Iowa Code section 537.7103.[3]

---

[2]Anderson produced affidavits executed by other former customers who alleged they had relied on Nextel's agents' representations that early termination fees are illegal and unenforceable in Iowa.

[3]Anderson's petition also alleges that Nextel fraudulently misrepresented the terms and conditions of her service agreement and that the debt collection agency's attempts to collect her cell phone cancellation fees violated the IDCPA. Nextel has not cross-appealed to assert the district court erred in denying its motion for summary judgment on the fraudulent misrepresentation claim, and the parties have reached a settlement on that matter. Anderson has also settled her claim against Lamont.

4

Nextel filed a motion for summary judgment asserting the ICCC does not apply to the transaction in this case because no debt was deferred under the agreement, no services were provided by Nextel in installments, no debt payable by Anderson in installments was created under the agreement, and no finance charge was made by Nextel. The district court granted Nextel's motion, holding the agreement signed by Anderson is not subject to the ICCC because it neither resulted in an extension of credit, nor created a debt payable in installments. Anderson has appealed.

## II.     Scope of Review.

We review rulings on motions for summary judgment for correction of errors at law. *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005). A motion for summary judgment should be granted when there is no genuine issue of material fact for trial, and the movant is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). In ascertaining whether there is a genuine issue of material fact, we review the record in the light most favorable to the non-moving party. *Schoff v. Combined Ins. Co.*, 604 N.W.2d 43, 45 (Iowa 1999).

## III.    Discussion.

Anderson contends the district court erred in holding the contract did not constitute an extension of credit to Anderson and that the "debt" incurred by Anderson was not payable in installments. We conclude the district court correctly determined the ICCC does not apply to the cellular service agreement in this case.[4]

---

[4]Because we conclude the ICCC does not apply, we do not address Anderson's IDCPA claim or Nextel's argument that the ICCC is preempted by federal law, as both arguments are predicated on the applicability of the ICCC to the transaction between Anderson and Nextel.

Anderson alleges Nextel's charge of cancellation fees violates Iowa Code sections 537.3310 and 537.3402 which are part of the ICCC. Section 537.3310 permits consumers, in certain circumstances, to cancel obligations undertaken in consumer credit transactions that have not yet been performed by a creditor, and places limitations on the charges recoverable by the creditor. Section 537.3402 limits a creditor's ability to assess charges for default by a consumer in a consumer credit transaction. A default charge in excess of the creditor's "reasonable expenses incurred in realizing on a security interest" is unenforceable. Iowa Code § 537.3402.

Sections 537.3310 and 537.3402 apply only to a "consumer credit transaction," which is defined as "a consumer credit sale or consumer loan, or a refinancing or consolidation thereof, or a consumer lease, or a consumer rental purchase agreement." Iowa Code § 537.1301(11).[5] Anderson contends the subscriber agreement qualifies as a "consumer credit transaction" because it is a "consumer credit sale."

> [A] consumer credit sale is a sale of . . . services . . . in which all of the following are applicable:
>
> (1)    Credit is granted either pursuant to a seller credit card or by a seller who regularly engages as a seller in credit transactions of the same kind.
>
> (2)    The buyer is a person other than an organization.
>
> (3)    The goods, services, or interest in land are purchased primarily for a personal, family or household purpose.
>
> (4)    Either the debt is payable in installments or a finance charge is made.
>
> (5)    With respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars.

---

[5]Iowa Code section 537.1301 was amended in 2005, adding a new subsection (3), and renumbering the succeeding subsections accordingly. 2005 Iowa Acts ch. 44, § 1 (codified at Iowa Code § 537.1307(3) (2005)). Thus, under the 2007 version of the Iowa Code the definition of "consumer credit transaction" is located at section 537.1301(12), and the definition of "consumer credit sale" is located at section 537.1301(13).

Iowa Code § 537.1301(12)(*a*).[6]  The dispute in this case centers entirely on whether Nextel extended "credit" to Anderson, and, if so, whether Anderson's debt was "payable in installments."[7]

As the term is used in section 537.1301(12)(*a*)(1), "credit" is "the right granted by a person extending credit to a person to defer payment of debt, to incur debt and defer its payment, or to purchase property or services and defer payment therefor."  Iowa Code § 537.1301(15).  Anderson contends the cellular service agreement constitutes an extension of credit because (1) the contract states Nextel would rely on a credit check and determination of creditworthiness "in making a decision to extend credit with regard to services" and (2) she was obligated to pay for an entire year of service fees to be paid monthly.  We find neither argument persuasive.

A transaction is only a "credit" transaction if it falls within the definition of that term in Iowa Code section 537.1301(12)(*a*)(1).  Neither the fact that the contract refers to "credit" nor the performance of a credit check transforms an otherwise non-credit transaction into a credit transaction.[8]  Although parties may expressly contract to adopt the protections of the ICCC, *see First Northwestern National Bank, Denison v. Crouch*, 287 N.W.2d 151, 153 (Iowa 1980) (holding the ICCC applied to a note which provided that it was "subject to the provisions of the Iowa Consumer Credit Code applying to consumer loans" even though the transaction did not satisfy the

---

[6]Iowa Code section 537.1301(12)(*b*) contains two additional limitations on the definition of consumer credit sale, neither of which is relevant in this case.

[7]Anderson does not contend the cancellation fee is a finance charge.  *See* Iowa Code § 537.1301(12)(*a*)(4), (19).

[8]The mere act of checking a consumer's credit does not indicate a party's intention to extend credit to that consumer.  Indeed, there are various commercially valid reasons a party to a noncredit transaction may wish to check the creditworthiness of the other party, including determining the likelihood that the other party will fulfill its obligations under the proposed contract.

statutory definition of a "consumer loan"), a mere reference to "credit" in the contract is insufficient to do so.

We conclude the service and payment arrangement established in Nextel's subscriber agreement does not fit within the statutory definition of a "credit" transaction. The agreement does not, as Anderson contends, obligate Nextel's customer to pay for an entire year of service fees in monthly installments. Instead, the agreement expressly allows both parties the option to cancel the agreement before the end of the term under specified conditions. In the event Anderson exercised her option to cancel, she was not obligated for the full year "term," but only for services already provided plus the early cancellation fee. Because there is no "sum charged which [was] due and owing" for one year's service at the outset of the contract, Anderson was not indebted for the cost of service for twelve months when the contract was executed. *State ex rel. Miller v. Nat'l Farmers Org.*, 278 N.W.2d 905, 906 (Iowa 1979). The agreement did not allow Anderson to defer payment of any monthly invoice for services provided by Nextel. *See id.* (no credit transaction resulted where membership dues were payable at the time of application for membership and annually thereafter). As Anderson was obligated to pay charges invoiced by Nextel as they were billed each month, the agreement did not constitute an extension of "credit" for the one-year term. *Cf. Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 547 (7th Cir. 2005) (concluding a residential lease for a one-year term and requiring monthly payments did not defer a debt); *Riethman v. Berry*, 287 F.3d 274, 277–78 (3d Cir. 2002) (concluding lawyers who did not require up-front payment nonetheless did not "give their clients a unilateral right to defer payments"); *Shaumyan v. Sidetex Co.*, 900 F.2d 16, 18 (2d Cir. 1990) (concluding a home improvement contract providing for progress

payments did not defer debt); *Kuhfeldt v. Liberty Mut. Ins. Co.*, 833 F. Supp. 632, 635–36 (E.D. Mich. 1993) (concluding an insurance policy providing for one year's coverage and not requiring plaintiffs to continue to pay monthly premiums was not a credit transaction); *Liberty Leasing Co. v. Machamer*, 6 F. Supp. 2d 714, 717–19 (S.D. Ohio 1998) (concluding consumer leases do not defer debt because they are payments for contemporaneous use).

The district court correctly concluded the subscriber agreement obligated Nextel to provide month-to-month service and required Anderson to pay Nextel's invoices for such service when billed each month. Under this month-to-month arrangement, Anderson can at best argue she incurred "debt" for thirty days' service at the beginning of each month, as the contract required thirty days' notice for cancellation. Even if we assume this payment structure constituted an extension of some form of "credit" for each month, the service agreement would still not meet the statutory requirements for a consumer credit sale because the "debt" incurred for each month was not payable in installments, but was due and payable upon the customer's receipt of the monthly invoice. Iowa Code § 537.1301(12)(*a*)(4); *Williams v. AT & T Wireless Servs., Inc.*, 5 F. Supp. 2d 1142, 1145 (W.D. Wash. 1998) (noting that under a monthly cellular services contract, "once the subscriber is billed for services he has used, he cannot defer payment").

## IV. Conclusion.

We conclude Nextel's subscriber agreement did not constitute a consumer credit sale, and therefore the provisions of the Iowa Consumer Credit Code do not apply. The district court's summary judgment ruling is affirmed.

**AFFIRMED.**