# In the Iowa Supreme Court

No. 23–1510

Submitted December 17, 2024—Filed January 24, 2025

**Lance Allen Degeneffe** and **Tracy Lynn Degeneffe,**

Appellees,

vs.

**Home Pride Contractors, Inc.,**

Appellant.

Interlocutory appeal from the Iowa District Court for Boone County, John J. Haney, judge.

A contractor seeks interlocutory appeal from district court summary judgment ruling that its roofing contract is a consumer credit sale subject to the Iowa Consumer Credit Code. **Reversed and Case Remanded with Instructions.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Brian P. Rickert and Stephanie A. Koltookian of Brown, Winick, Graves, Gross, and Baskerville, P.L.C., Des Moines, for appellant.

Matthew E. Laughlin, Kacy L. Flaherty-Tarpey, Elizabeth A. Etchells, and Jenna L. Wheeler of Dentons Davis Brown PC, Des Moines, for appellees.

Alan R. Ostergren of Alan R. Ostergren, PC, Des Moines, and Gary W. Auman and Lucas A. Strakowski of Auman, Mahan + Furry, LPA, Dayton, Ohio, for amicus curiae Midwest Roofing Contractors Association, Inc.

**Oxley, Justice.**

After experiencing wind and hail damage, Lance and Tracy Degeneffe (Degeneffes) entered into a roofing contract with Home Pride Contractors, Inc. (Home Pride) to repair their roof, gutters, and siding. Home Pride completed the roof repairs and billed the Degeneffes, but they refused to pay, leading Home Pride to hire an attorney to help collect the debt. The Degeneffes sued Home Pride, maintaining that its prior counsel engaged in harassing and abusive collection efforts in violation of the Iowa Consumer Credit Code (ICCC). *See* Iowa Code § 537.7103(2) (2022).

On cross motions for summary judgment, Home Pride argued that it is not in the business of extending credit or lending money to its customers and thus is not subject to the ICCC, while the Degeneffes argued that the roofing contract is a consumer credit sale subject to the ICCC and Home Pride's conduct was harassing and abusive as a matter of law under the ICCC. The district court denied Home Pride's motion and granted the Degeneffes' motion in part—"in so far as establishing that the Roofing Contract . . . constitutes a 'consumer credit sale' subject to the ICCC." The court left the fact question as to whether Home Pride's conduct was harassing and abusive for trial.

We granted Home Pride's interlocutory appeal to determine whether the roofing contract is a consumer credit sale subject to the ICCC. As explained more fully below, we agree with Home Pride that it is not. We reverse the district court's entry of partial summary judgment in favor of the Degeneffes and remand for entry of summary judgment in favor of Home Pride.

## I. Factual Background and Proceedings.

On August 21, 2021, Home Pride entered into a roofing contract with the Degeneffes. Under the terms of the roofing contract, Home Pride agreed to replace

the Degeneffes' roof, gutters, and siding on their home in Ogden in exchange for payment of the replacement cost value provided to the Degeneffes under their homeowners' insurance policy, plus any costs necessarily incurred for overhead, supplements, and profit. Paragraph 5 of the contract provided: "Upon completion of work as set forth by the agreement, Customer agrees to sign a completion certificate and pay the balance of the contract (1.5% added after 30 days)." The roofing contract's Terms of Agreement also contained a default provision:

> 12. Default. SHOULD DEFAULT BE MADE IN PAYMENT OF THIS AGREEMENT, CHARGES SHALL BE ADDED FROM THE DATE THEREOF AT A RATE OF ONE AND ONE-HALF (1-1/2) PERCENT PER MONTH (18% PER ANNUM) OR THE MAXIMUM RATE ALLOWABLE BY LAW ON THE REMAINING BALANCE NOT PAID, WITH A MINIMUM CHARGE OF $2.00 PER MONTH, AND IF PLACED IN THE HANDS OF AN ATTORNEY FOR COLLECTION, ALL ATTORNEYS AND LEGAL FILING FEES SHALL BE PAID BY CUSTOMER ACCEPTING THIS AGREEMENT.

After Home Pride repaired the Degeneffes' roof, the Degeneffes' insurance company paid the Degeneffes the replacement cost value under their policy, totaling $13,164.37. Home Pride then billed the Degeneffes for that amount. The Degeneffes refused to pay for Home Pride's services, accusing Home Pride, a general contractor, of being storm chasers seemingly because Home Pride's subcontractor completed the roofing repairs rather than Home Pride itself. After Home Pride's former attorney engaged in several unsuccessful collection efforts for the balance due under the roofing contract—including demand letters, emails, and phone calls—Home Pride sued the Degeneffes in Douglas County, Nebraska, for breach of contract, quantum meruit, unjust enrichment, and fraudulent misrepresentation. The Nebraska lawsuit was dismissed for lack of personal jurisdiction because the Degeneffes are Iowa residents, and the

property in question is located in Boone County, Iowa. Home Pride then filed a collection action in Boone County.[1]

On December 16, 2022, the Degeneffes filed this separate suit, also in Boone County, alleging that Home Pride's harassing and abusive collection efforts to obtain payment for their services violated the ICCC. *See* Iowa Code § 537.5201(1)(*a*)(25) (providing a cause of action for damages and penalties to a consumer against a person who engages in unfair debt collection practices under Iowa Code section 537.7103).

As relevant to the Degeneffes' claims here, the ICCC prohibits:

- A debt collector from engaging in "oppressive, harassing, or abusive" conduct "in connection with the collection or attempted collection of a debt," including "profane or obscene language or language that is intended to abuse the hearer or reader and which by its utterance would tend to incite an immediate breach of the peace." *Id.* § 537.7103(2)(*a*).

- A debt collector from "collect[ing] or attempt[ing] to collect a debt by means of an illegal threat, coercion or attempt to coerce," including "falsely accus[ing] a person of fraud or any other crime." *Id.* § 537.7103(1)(*b*).

- "With respect to a consumer credit transaction, the agreement may not provide for the payment by the consumer of attorney fees." *Id.* § 537.2507.

Specifically, the Degeneffes assert that Home Pride engaged in harassing and abusive conduct by: "dragging the Degeneffes into Nebraska District Court," where there was no personal jurisdiction; "calling Lance Degeneffe a criminal and asserting that 'maybe he hasn't changed his ways' in an attempt to collect an alleged debt"; accusing the Degeneffes of stealing from Home Pride in an

---

[1]As the district court noted, Home Pride's collection action remains unresolved and is pending in an action in district court between the same parties. *See Home Pride Contractors, Inc. v. Degeneffe*, LACV042366 (Iowa Dist. Ct. for Boone Cnty.). That separate case is set to go to trial in Spring 2025.

attempt to collect an alleged debt; and demanding attorney fees from the Degeneffes (i.e., consumers).

On June 15, 2023, Home Pride moved for summary judgment, asserting "that it is not subject to the [ICCC] or any cause of action arising under Iowa Code Chapter 537, as it is not engaged in consumer credit transactions." The Degeneffes resisted and filed their own motion for summary judgment, asserting that (1) Home Pride is subject to the ICCC because the roofing contract is a consumer credit sale "based on finance charges contained in the [roofing contract], including interest and the time price differential charge" and (2) Home Pride's conduct was "harassing and abusive" under the ICCC, subject to judicial sanction.

On August 17, following a hearing on the cross motions for summary judgment, the district court issued an order denying Home Pride's motion and granting the Degeneffes' motion in part, concluding that the roofing contract is a consumer credit sale subject to the ICCC and finding a fact question as to whether Home Pride's conduct was harassing and abusive.

On September 15, Home Pride timely filed an application for interlocutory appeal of the district court summary judgment ruling. The Degeneffes filed a response on September 29, agreeing that interlocutory review was appropriate. We granted the interlocutory appeal and stayed all proceedings in the district court on October 18.

We retained the appeal to address whether the roofing contract between a contractor and homeowners is a consumer credit sale subject to the ICCC.

**II. Standard of Review.**

"We review summary judgment rulings for correction of errors at law." *Myers v. City of Cedar Falls*, 8 N.W.3d 171, 176 (Iowa 2024) (quoting *Slaughter*

*v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019)). The moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Id.* (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6–7 (Iowa 2015)). Summary judgment is proper where the issue is purely a legal one. *Rilea v. State*, 959 N.W.2d 392, 393 (Iowa 2021).

### III. Analysis.

This appeal turns on whether the roofing contract is a "consumer credit sale" under the ICCC as defined in Iowa Code section 537.1301(13)(*a*).

> [A] consumer credit sale is a sale of goods, services, or an interest in land in which *all* of the following are applicable:
>
>   (1) *Credit is granted* either pursuant to a seller credit card or by a seller who regularly engages as a seller in *credit* transactions of the same kind.
>
>   (2) The buyer is a person other than an organization.
>
>   (3) The goods, services, or interest in land are purchased primarily for a personal, family, or household purpose.
>
>   (4) Either the debt is payable in installments or a *finance charge* is made.
>
>   (5) With respect to a sale of goods or services, the amount financed does not exceed the threshold amount.

*Id.* (emphasis added). The general assembly codified the policies and purposes for enacting the ICCC, which include to: "[s]implify, clarify and modernize the law governing retail installment sales and other consumer credit," *id.* § 537.1102(2)(*a*); "[p]rotect consumers against unfair practices," *id.* § 537.1102(2)(*d*); "[c]onform the regulation of disclosure in consumer credit

transactions to the Truth in Lending Act," *id.* § 537.1102(2)(*f*); and "[m]ake the law . . . more uniform among the various jurisdictions," *id.* § 537.1102(2)(*g*).

The Degeneffes press the point that the ICCC "shall be liberally construed and applied to promote its underlying purposes and policies." *Id.* § 537.1102(1). Although the ICCC should be liberally construed, that does not allow this court "to ignore the ordinary meaning of words in a statute and to expand or contract their meaning to favor one side in a dispute over another." *Dornath v. Emp. Appeal Bd.*, 988 N.W.2d 687, 692 (Iowa 2023) (quoting *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 702 (Iowa 2022)). On the contrary, principles of statutory interpretation instruct that to best carry out the ICCC's purposes and policies, we must "giv[e] a fair interpretation to the language the legislature chose; nothing more, nothing less." *Id.* (quoting *Vroegh*, 972 N.W.2d at 702).

The second, third, and fifth elements of a consumer credit sale are not at issue in this interlocutory appeal: the Degeneffes are persons (as opposed to an organization); the goods and services were to replace the roof on the Degeneffes' personal residence; and the amount in question does not exceed the threshold amount. *See* Iowa Code § 537.1301(13)(*a*). The dispute involves the first and fourth elements: whether Home Pride granted credit to the Degeneffes and whether the interest charged was a finance charge. *See id.*

**A. Whether Home Pride Granted Credit to the Degeneffes.** The first element of a consumer credit sale requires proof that "[c]redit is granted either pursuant to a seller credit card or by a seller who regularly engages as a seller in *credit* transactions of the same kind." *Id.* § 537.1301(13)(*a*)(1) (emphasis added). The ICCC defines "credit" as "the *right* granted by a person extending credit to a person to defer payment of debt, incur debt and defer its payment, or to purchase property or services and defer payment therefor." *Id.* § 537.1301(16)

(emphasis added). The Degeneffes argue that Home Pride extended credit because the roofing contract allowed them to defer payment for up to thirty days past the due date without incurring the 1.5% monthly charge. Home Pride argues that it did not extend credit to the Degeneffes because the roofing contract required payment in full upon completion of the work.

In analyzing other consumer transactions to determine whether there was a right to defer payment as required to establish an extension of credit, we have consistently concluded that a contract requiring full payment at the time of the relevant transaction is not an extension of credit, even when the contract provides for a delay in attempting to collect sums owed before imposing a penalty—i.e., a forbearance in collecting sums or a grace period.[2] *See, e.g.*, *Legg v. W. Bank*, 873 N.W.2d 763, 769–70 (Iowa 2016) (holding that a deposit account agreement did not extend any right to defer payment because overdraft payments were due and payable at the time the account was overdrawn); *Anderson v. Nextel Partners, Inc.*, 745 N.W.2d 464, 468 (Iowa 2008) (holding that a cellphone service agreement did not extend any right to defer payment of monthly invoices because the customer "was obligated to pay charges . . . as they were billed each month"); *Muchmore Equip., Inc. v. Grover*, 315 N.W.2d 92, 98–99 (Iowa 1982) (holding that a contract for the construction of a grain bin did not extend any right to defer payment because the contract required payment in full upon completion of the work), *superseded by statute on other grounds*, Iowa Code § 535.2(2)(*a*)(5) (1989); *State ex rel. Miller v. Nat'l Farmers Org.*, 278 N.W.2d 905, 907 (Iowa 1979) (holding that a membership agreement did not grant members any right to defer

---

[2]"[T]he definition of credit under the ICCC is the same regardless of the type of consumer transaction—consumer credit sale, consumer lease, or consumer loan—and thus, we find these cases instructive." *Legg v. W. Bank*, 873 N.W.2d 763, 769 (Iowa 2016) (citing Iowa Code § 537.1301(12)).

payment of dues and noting that a delay "in attempting to collect past dues and assessments does not establish that credit was granted; it only demonstrates forbearance in collecting sums which, if owed, were due and payable at the time the debts were incurred").

The roofing contract at issue falls within this rule. In signing the contract, the Degeneffes agreed that "[u]pon completion of work," they would "pay the balance of the contract (1.5% added after 30 days)." Thus, like in each of the aforementioned cases, the full contract price was due at completion of the work. Requiring payment in full is the converse of extending credit.

"In interpreting contracts, we give effect to the language of the entire contract according to its commonly accepted and ordinary meaning. Moreover, particular words and phrases are not interpreted in isolation. Instead, they are interpreted in a context in which they are used." *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794. 797–98 (Iowa 1999) (citations omitted). Using these contract principles as a guide, we conclude that the roofing contract between Home Pride and the Degeneffes does not fit within the statutory definition of a "credit" transaction. *See Legg*, 873 N.W.2d at 770 ("The ICCC definition of credit in section 537.1301(16) is much more narrow than the common law definition."). That the contract also provided for default interest at the rate of 1.5% per month and collection costs to be added if payment was not made within thirty days did not give the Degeneffes the "right" to defer the payment during that time. Rather, it specified the penalty for their breach if they defaulted on the contract payment term requiring full payment as soon as the job was completed, giving them a grace period before imposing the default penalties. Similar to *State ex rel Miller v. National Farmers Organization*, a thirty-day window to allow for payment of the contract price before imposing default interest "does not establish that credit

was granted; it only demonstrates forbearance in collecting sums which, if owed, were due and payable at the time the debts were incurred"—i.e., when the roofing repairs were completed. 278 N.W.2d at 907.

The district court accepted the Degeneffes' argument that the thirty-day period was a "time price differential" that allowed them to defer payment without penalty for up to thirty days. In doing so, the district court conflated the first and fourth elements of a consumer credit sale. *See* Iowa Code § 537.1301(21)(*a*)(2) (defining "finance charge" to include "[t]ime price differential, credit service, service, carrying or other charge, however denominated"). In analyzing whether Home Pride granted credit to the Degeneffes (the first element of a consumer credit sale), the district court concluded that "Home Pride used this standard contract, *which includes a finance charge*, with the Degeneffes' and other Iowa consumers." (Emphasis added.) The district court's analysis was improper for two reasons. First, use of a standard contract by a contractor who regularly engages in the same kind of work, e.g., roofing, is not sufficient to trigger ICCC coverage. The key word is "credit"—"a seller who regularly engages as a seller in *credit* transactions of the same kind." *Id.* § 537.1301(13)(*a*)(1). Thus, the district court and the Degeneffes improperly focused on the fact that Home Pride used the same contract terms in the same kind of transactions without considering whether those transactions were credit transactions. Second, use of a finance charge is the fourth element of a consumer credit sale. *See id.* § 537.1301(13)(*a*)(4). Relying on the finance charge to establish an extension of credit improperly melds the two distinct requirements into one.

Our interpretation of the roofing contract also aligns with the underlying purposes and policies as expressly stated in the ICCC: to "[c]onform the regulation of disclosure in consumer credit transactions to the Truth in Lending

Act," *id.* § 537.1102(2)(*f*), and to "[m]ake the law . . . more uniform among the various jurisdictions," *id.* § 537.1102(2)(*g*). Other jurisdictions addressing similar circumstances have found no extension of "credit" when a contract requires payment in full upon completion of the work and provides for interest charges if the debt incurred is not timely paid. *See, e.g., Hahn v. Hank's Ambulance Serv., Inc.*, 787 F.2d 543, 544 (11th Cir. 1986) (per curiam) (concluding that an ambulance company was not subject to the Truth in Lending Act because the ambulance company did not grant customers the "right to defer payment of a debt or to incur debt and defer its payment" by charging customers an additional fee when customers failed to pay at the time services were rendered); *Simpson v. C.J.V. Constr. & Consulting, Inc.*, 690 So. 2d 363, 364–65 (Ala. 1997) (collecting cases and concluding that a construction contractor was not a "creditor" subject to the Truth in Lending Act because billing homeowners periodically as various stages of a construction project were completed and charging a "late pay penalty" of 1.5% per month if an invoice was not paid within thirty days did not establish a right to defer payment—rather, "the amount was due upon the sending of the invoice").

For these reasons, we conclude that Home Pride did not grant credit to the Degeneffes when it entered into the roofing contract.

**B. Whether the Interest Charged Was a Finance Charge.** The fourth element of a consumer credit sale requires proof that "[e]ither the debt is payable in installments or a finance charge is made." *Id.* § 537.1301(13)(*a*)(4). But we have already concluded that Home Pride did not grant credit to the Degeneffes, so whether or not the interest charged fits the definition of a "finance charge" is immaterial. *See Legg*, 873 N.W.2d at 769 ("Because we find . . . [no] extension of credit, we do not need to address whether the . . . fees were finance charges. This

is because the cap on finance charges in the ICCC applies only to 'creditors . . . extending credit in consumer credit transactions.' Similarly, the ICCC defines a finance charge as a charge that is 'imposed . . . by the creditor as an incident to or as a condition of the extension of credit.' " (first quoting Iowa Code § 537.1108(1) (2009); and then quoting *id.* § 537.1301(21)(*a*))). The roofing contract required full payment upon completion of the work and therefore was not an extension of credit. Thus, even if the default interest of 1.5% per month was a finance charge, it was not part of a credit transaction. *See, e.g.*, *Muchmore Equip.*, 315 N.W.2d at 98 (holding that even though the contract included a finance charge, "this contract itself was not on 'credit'; it called for the balance in full upon completion of the building"). The district erred in concluding that the thirty-day grace period made the contract a credit transaction merely because it added a "finance charge" as a remedy for the default after thirty days.

**IV. Conclusion.**

We reverse the district court's entry of partial summary judgment in favor of the Degeneffes and remand for entry of summary judgment in favor of Home Pride.

**Reversed and Case Remanded with Instructions.**