# IN THE COURT OF APPEALS OF IOWA

No. 20-0233
Filed October 6, 2021

THE ESTATE OF ANTHONY J. ZDROIK, DECEASED, BY TRISHANN W. ZDROIK, PERSONAL REPRESENTATIVE,
    Plaintiff-Appellee,

vs.

IOWA SOUTHERN RAILWAY COMPANY, BRIAN OSTROWSKI, JOHN OSTROWSKI, STEVEN RUNSTROM AND PHIL GLINIECKI,
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Appanoose County, Gregory G. Milani, Judge.

Defendants appeal several rulings by the district court on summary judgment with regard to various claims of negligence brought by the Estate of Anthony J. Zdroik. **REVERSED AND REMANDED.**

Stephen M. Warner and Lee A. Miller of Arthur Chapman Kettering Smetak & Pikala, PA, Minneapolis, Minnesota, and Kimberly K. Hardeman, Cedar Rapids, and Jennifer K. Eggers, Lakeville, Minnesota, for appellant Iowa Southern Railway Company.

Daniel B. Shuck of the Shuck Law Firm, Sioux City, for appellants Brian Ostrowski, John Ostrowski, Steven Runstrom and Phil Gliniecki.

Steven L. Groves, St. Louis, Missouri, and George F. Davison, Jr., Des Moines, for appellee.

Heard by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

Sheet Piling Services, LLC dispatched twenty-three-year-old Anthony Zdroik and two other employees to repair a railroad bridge belonging to Iowa Southern Railroad Company. The crew used a grapple and sling to transfer railroad ties to a crane truck. Zdroik stood on the bed of the truck to remove the ties from the sling. During one of the transfers, the railroad tie or crane grapple struck Zdroik. Zdroik died as a result of his on-the-job injury.

Zdroik's estate sued the railroad as well as four people associated with Sheet Piling: Brian Ostrowski, John Ostrowski, Steven Runstrom, and Phil Gliniecki, none of whom worked with Zdroik on the day of the accident. The estate alleged the railroad violated the Federal Employers' Liability Act and was negligent in training crew members; and the Sheet Piling defendants were co-employees of Zdroik who were grossly negligent in training him.

The defendants filed motions for summary judgment. The court denied the Sheet Piling defendants' motion on the ground that the Ostrowskis were co-employees of Zdroik who could be sued for gross negligence and because fact issues on the elements of gross negligence precluded summary judgment. As for the railroad, the court granted the summary judgment motion on the Federal Employer's Liability Act claim but denied the motion on the negligence claim. The court denied motions to reconsider the rulings.

The defendants applied for interlocutory review. The supreme court granted the applications and stayed further proceedings.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Our review is for correction of errors at law. *See Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016).

### I.    *Gross Negligence Claims–Sheet Piling Defendants*

The rights and remedies of an employee against an employer for an on-the job injury "shall be the exclusive and only rights and remedies of the employee . . . at common law or otherwise, on account of such injury." Iowa Code § 85.20(1) (2018). That exclusivity provision does not apply if the injury was caused by a co-employee's "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." *Id.* § 85.20(2).

### A.    *Co-Employee Status–Ostrowskis*

As a preliminary matter, the Ostrowskis assert they were not co-employees. Their assertion implicates the subject matter jurisdiction of the district court. *See Henrich v. Lorenz*, 448 N.W.2d 327, 331 (Iowa 1989) ("[I]f the defendants were, in fact, in the position of . . . employer, then the court [would] lack[ ] subject matter jurisdiction over [the] suit. Jurisdiction over [the] complaint would lie exclusively with the industrial commissioner."). Subject matter jurisdiction may not be waived. *See State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993) ("[S]ubject matter jurisdiction is a statutory matter and cannot be waived by consent, waiver, or estoppel."). Accordingly, we must address their status.

The Ostrowskis specifically claim they cannot be considered co-employees because they "have not chosen to be covered by" the workers' compensation act. They point to Iowa Code section 85.1A, which states:

> A proprietor, limited liability company member, limited liability partner, or partner who is actively engaged in the proprietor's, limited liability company member's, limited lability partner's, or partner's business on a substantially full-time basis may elect to be covered by the workers' compensation law of this state by purchasing . . . workers' compensation insurance.

They note that "[p]roprietors, limited liability company members, limited liability partners, and partners who have not elected to be covered by the workers' compensation law of this state pursuant to section 85.1A" are excluded from the statutory definition of "workers" or "employees." Iowa Code § 85.61(11)(c)(5).

The supreme court addressed and rejected this election-of-coverage argument as a basis for analyzing the exclusivity language of section 85.20. *See Horsman v. Wahl*, 551 N.W.2d 619, 621 (Iowa 1996). The court made a distinction between coverage and remedy and concluded: "The exclusive remedy provision of workers' compensation law, set forth in section 85.20, does not relate to coverage; therefore, in the context of section 85.20 a definition of [the defendant] as an "employer," pursuant to section 85.61(2), is required." *Id.*; *see also Mullen v. Grettenberg*, No. 14-1699, 2015 WL 5965221, at *1–2 (Iowa Ct. App. Oct. 14, 2015). We turn to section 85.61(2) to determine whether the Ostrowskis were Zdroik's employers rather than his co-employees.

Section 85.61(2)(a) defines "[e]mployer" as including and applying to the following: "A person, firm, association, or corporation, state, county, municipal corporation, school corporation, area education agency, township as an employer

of volunteer fire fighters and emergency medical care providers only, benefited fire district, and the legal representatives of a deceased employer." The Ostrowskis assert Sheet Piling "is a corporation/partnership under the State of Wisconsin" and "[i]t is owned by [them] in a partnership." They cite *Carlson v. Carlson*, 346 N.W.2d 525, 526 (Iowa 1984), for the proposition that "a member of a partnership, even if he is a 'working partner,' is still in law the employer of employees of the partnership and cannot be sued."

The Ostrowskis correctly characterize *Carlson*. There, the court concluded "that a member of a partnership is an employer of the partnership's employees" and, "[a]ccordingly, Iowa Code section 85.20 precludes an injured employee and his dependents from suing a partner in an independent tort action for his injuries received during the course of his employment for the partnership." *Carlson*, 346 N.W.2d at 527. If the Ostrowskis were partners in a partnership, *Carlson* would be dispositive and we would be obligated to dismiss them from the suit for lack of subject matter jurisdiction.

Sheet Piling was not a partnership; it was listed as an "L.L.C." An LLC is a limited liability company. *See* Iowa Code § 489.108(1) ("The name of a limited liability company must contain the words 'limited liability company' or 'limited company' or the abbreviation 'L.L.C.', 'LLC', or 'LC'."). Sheet Piling itself might have satisfied the section 85.61(2)(a) definition of "employer" and been immune from suit for gross negligence.[1] But that is not the issue. The issue is the status of the Ostrowskis individually.

---

[1] Limited liability companies are not expressly mentioned in the section 85.61(2)(a) definition of employer, but the legislature's inclusion of "person" encompasses

John Ostrowski attested he was "an owner and partner of Sheet Piling." Brian Ostrowski similarly attested he was "an owner and partner of Sheet Piling." The statute governing limited liability companies makes no reference to owners or partners of limited liability companies. It refers to "[m]anager," "[m]anager-managed limited liability company," "[m]ember", "[m]ember-managed limited liability company," and "person." Iowa Code § 489.102(11), (12), (13), (14), (17). As Zdroik notes, Sheet Piling's operating agreement, which might have clarified the Ostrowskis' status, was not included in the summary judgment record. *See Felt v. Felt*, No. 18-0710, 2019 WL 2372321, at *3 (Iowa Ct. App. June 5, 2019) ("[T]he operating agreement governs the LLC, with the statutory provisions governing where the operating agreement does not otherwise provide.").

We conclude there is a genuine issue of material fact as to the status of the Ostrowskis within the limited liability company. That issue of fact must be resolved to determine whether the Ostrowskis were co-employees for purposes of section 85.20 or whether they were employers of Zdroik who would not be subject to gross negligence liability under section 85.20. As noted at the outset, this is an issue of subject matter jurisdiction that cannot be waived.

Because the district court resolved the co-employee issue based on election of coverage under section 85.1A and 86.61(11)(c)(5) rather than their employer status under 86.61(2), we reverse the denial of summary judgment and remand for reconsideration of the issue under section 85.61(2). *See Horsman*, 551 N.W.2d

---

them. *See* Iowa Code § 4.1(20); 5 Matthew G. Doré, *Iowa Practice Series: Business Organizations* § 13:6 (2020). The prefatory language of section 85.61(2)(a) also uses the word "include," which suggests entities other than those that are expressly enumerated may fit within the definition of employer.

at 621. If the Ostrowskis are deemed to be co-employees, the court may examine whether one or more of the elements of gross negligence were satisfied as a matter of law. We proceed to that question with respect to the remaining two Sheet Piling defendants.

### B.    Co-Employee Negligence–Runstrom, Gliniecki

To establish co-employee gross negligence, a plaintiff must prove the defendants had: "(1) knowledge of the peril to be apprehended[2]; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril." *Thompson v. Bohlken*, 312 N.W.2d 501, 505 (Iowa 1981). Allegations of gross negligence "carry a high burden of proof," *see Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 321 (Iowa 1992), and proving a case of gross negligence under section 85.20(2) is "difficult." *See Swanson v. McGraw*, 447 N.W.2d 541, 543 (Iowa 1989); *cf. Dudley v. Ellis*, 486 N.W.2d 281, 283 (Iowa 1992) (listing opinions in which plaintiffs failed to present substantial evidence of gross negligence to submit to jury).

Runstrom and Gliniecki contend the estate failed to establish the elements of gross negligence as a matter of law. If we conclude the estate could not establish any of the three elements, we need not address the remaining elements. *See, e.g.*, *Mrla v. Johnson*, No. 20-0448, 2021 WL 1016905, at *3 (Iowa Ct. App. Mar. 17, 2021); *Whitacre v. Brown*, No. 11-0088, 2011 WL 4950183, at *3 (Iowa Ct. App. Oct. 19, 2011). We elect to focus on the second element—"knowledge

---

[2] Runstrom and Gliniecki argue the "peril" was Zdroik's presence on the truck bed as the railroad ties were being unloaded. For purposes of summary judgment, we accept the estate's characterization of the peril—a failure of Runstrom and Gliniecki to properly train Zdroik and his coworkers.

that injury is a probable, as opposed to a possible, result of the danger." *Thompson*, 312 N.W.2d at 505.

""Probably' is defined as that which 'seems reasonably . . . to be expected: so far as fairly convincing evidence or indications go.'" *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 391 (Iowa 2000) (quoting Webster's Third New Int'l Dictionary 1806 (unabr. ed.1986)). "[P]ossible consequences are those which happen so infrequently that they are not expected to happen again." *Whitacre*, 2011 WL 4950183, at *3 (quoting *Thomas v. Food Lion, L.L.C.*, 570 S.E.2d 18, 20 (Ga. Ct. App. 2002)). A plaintiff "must show that the defendant[s] knew or should have known that [their] conduct placed the plaintiff in a zone of imminent danger." *Alden v. Genie Indus.*, 475 N.W.2d 1, 2 (Iowa 1991); *see also Hernandez v. Midwest Gas Co.*, 523 N.W.2d 300, 305 (Iowa Ct. App. 1994). A zone of imminent danger may be shown by establishing the defendants' "actual or constructive awareness of a history of accidents under similar circumstances" or by establishing a "high probability of harm is manifest even in the absence of a history of accidents or injury." *Alden*, 475 N.W.2d at 2–3. The estate essentially concedes it did not rely on a history of accidents to establish a zone of imminent danger but relied on the obviousness of a high probability of harm.

The district court found a genuine issue of material fact on whether an injury "could be reasonably expected if Zdroik and his co-employees were not properly trained" on whether "one or more of the Defendants had a duty to ensure that Zdroik and his co-employees had a degree of training and that failure to do so would have made the injury to Zdroik probable." We disagree with this assessment.

Runstrom testified by deposition that he served as safety director for Sheet Piling. He worked with management on "developing safety policies [and] procedures", and also did "field visits to just kind of check on people." He characterized Zdroik's accident as "an unforeseeable event." He attested Zdroik would have participated in a "tailgate safety meeting" on the day of the accident, which would have included a discussion of "working near [railroad] tracks"; getting "hit by/struck by/caught between"; and "positive confirmation from operator." He further attested he was "570 miles from the accident."

While Runstrom may have had a duty to train Zdroik and his crew members on safety procedures, the estate failed to establish that he was aware injury was a probable result of his training protocols or a breach of those protocols. *See Walker v. Mlakar*, 489 N.W.2d 401, 405 (Iowa 1992) ("For us to say that a coemployee's constructive knowledge or constructive 'consciousness' of a hazard, without any actual knowledge thereof, is adequate to establish the coemployee's 'gross negligence,' would be to require plant safety managers and safety engineers to become the insurers of other employees for every potential peril, real or otherwise, within the plant."); *Anderson v. Bushong*, No. 12-0640, 2013 WL 530961, at *6 (Iowa Ct. App. Feb. 13, 2013) (concluding the defendants "knew the plywood coverings could possibly result in a harmful fall, not that such a consequence was the probable result of the safety breach."). We reverse the denial of Runstrom's summary judgment motion and remand for entry of summary judgment in favor of Runstrom on the gross negligence claim.

Unlike Runstrom, Gliniecki was at the job site the day before the accident and was the site supervisor on that day. He acknowledged having a discussion

with the crew members about placing the railroad ties in a sling "so they can't fall free." He agreed that, at the time, there was "[n]o procedure" in place to specify where a crew member should stand relative to the materials in the sling but he thought the procedure "was probably in their briefing where to stand or where not to be." Such a procedure was incorporated into a subsequent version of the safety manual. At the time of the accident, Gliniecki stated the company had a "15/40 rule" that required crew members "to stay out of . . . the working area . . . so the operator knows they're clear, anybody walking in." The rule referred to the worker's "distance" from the "operator, the swing, the swing boom" and they "talk[ed] about that all the time."

Gliniecki had actual knowledge of the procedure to be followed on the date of the accident. But he did not have "knowledge that injury [was] a probable, as opposed to a possible, result of the danger." *See Thompson*, 312 N.W.2d at 505; *see also Tisor v. Hollerauer*, No. 19-0673, 2020 WL 5943994, at *5 (Iowa Ct. App. Oct. 7, 2020); *Lancial v. Burrell*, No. 20-0136, 2020 WL 5650616, at *2 (Iowa Ct. App. Sept. 23, 2020). We reverse the denial of summary judgment as to Gliniecki and remand for entry of summary judgment in his favor.

## II.    *Railroad–Negligence*

As noted at the outset, the district court granted summary judgment for the railroad on the estate's claim that the railroad violated the Federal Employers' Liability Act. The court reasoned that Zdroik was not an employee of the railroad. The estate also alleged the railroad violated regulations promulgated by the Federal Railroad Administration, part of the federal Department of Transportation, and the "violations constitute[d] negligence per se." *See Wiersgalla v. Garrett*, 486

N.W.2d 290, 292 (Iowa 1992) (stating injuries sustained as a proximate result of violations of regulations could constitute negligence per se). Relatedly, the estate alleged several specifications of negligence.[3]

The district court focused on the negligence per se theory. The court denied the railroad's summary judgment motion on that theory, reasoning "regulations can serve[ ] as the foundation for a negligence per se claim, irrespective of the employment roles of the parties." On reconsideration, the court acknowledged certain federal regulations placed the burden of safety training on employers and confirmed the railroad was not Zdroik's employer. But the court determined "other regulations specifically place[d] burdens on railroads . . . regardless of [their] payment relationship to workers." Finding Zdroik "was a member of the protected class" under the regulations, the court concluded "[t]he remaining issues of negligence are for the jury to decide."

On appeal, the railroad reiterates that, because it was not Zdroik's employer, the Federal Railroad Administration regulations could not establish a duty of care owing to Zdroik. *See Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 811 (Iowa 1994) ("[T]he threshold question in any tort case is whether the defendant owed the plaintiff a duty of care" and this is a matter of law for the court.).

The estate counters that two regulations unambiguously require the railroad to afford on track safety training "to every roadway worker on its tracks," and Zdroik's death "was the result of [the railroad's] failure to itself provide proper" training or "ensure they had received such training from" Sheet Piling. The first

---

[3] There is also an indication of a premises liability claim that was not pursued.

regulation cited by the estate states, "Each railroad to which this part applies shall adopt and implement a program that will afford on-track safety to all roadway workers whose duties are performed on that railroad. . . ." 49 C.F.R 214.303(a). The second regulation states, "Each railroad subject to this part shall maintain and have in effect an on-track safety program which complies with the requirements of this subpart." 49 C.F.R. 214.307.

The railroad responds that the two regulations must be considered in conjunction with the definition of "employer" which is the entity that "directly engages or compensates individuals to perform any of the duties defined in *this part.*" 49 C.F.R. 214.7 (emphasis added). "This part" includes "Subpart C," titled "[r]oadway [w]orker [p]rotection," which contains the two regulations—49 C.F.R. 214.303 and 214.307. The railroad also notes that the "roadway worker protection" subpart places the onus of complying with its safety provisions on the employer. Specifically, 49 C.F.R. 214.311(a) states "[e]ach employer is responsible for the understanding and compliance by its employees with the rules and the requirements of *this part.*" (emphasis added). Finally, the railroad argues that, if the regulations are vague, we must defer to the interpretation of the regulation by the Federal Railroad Administration (FRA) under *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), *Auer v. Robbins*, 519 U.S. 452 (1997), and *Chevron USA v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

In interpreting federal regulations, "the possibility of deference can arise only if a regulation is genuinely ambiguous." *Kisor*, 139 S. Ct. at 2414. "[B]efore concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Id.* at 2415 (*citing Chevron*, 467 U.S. at 843,

n.9). "[A] court must carefully consider the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* (internal citations and quotations omitted). "Doing so will resolve many seeming ambiguities out of the box, without resort to *Auer* deference." *Id.*; *cf. Messina v. Iowa Dep't of Job Serv.*, 341 N.W.2d 52, 56 (Iowa 1983) ("Generally, the rules of statutory construction and interpretation also govern the construction and interpretation of rules and regulations of administrative agencies." (citation omitted)); *see also State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003) (same).

We agree with the railroad that the two regulations on which the estate relies to find a duty of care running from the railroad to Zdroik must be read in tandem with the provisions defining who is responsible for carrying them out. When read as a whole, there is no question the "who" is the employer, Sheet Piling, not the railroad.

The "supplementary information" accompanying the regulations clinch that construction of the regulations. *See* Roadway Worker Protection, 61 Fed. Reg. 65959-01, 1996 WL 716080 (F.R. Dec. 16, 1996). In explaining the rationale for adding definitions of "employer" and "employee," the agency stated:

> Employees of contractors to railroads are included in the definition if they perform duties on or near the track. They should be protected as well as employees of the railroad. *The responsibility for on-track safety of employees will follow the employment relationship. Contractors are responsible for the on-track safety of their employees and any required training for their employees.* FRA expects that railroads will require their contractors to adopt the on-track safety rules of the railroad upon which the contractor is working. Where contractors require specialized on-track safety rules for particular types of work, those rules must, of course, be compatible with the rules of the railroad upon which the work is being performed.

*Id.* at 65966 (emphasis added). And in explaining the interplay of 214.303 and 214.311, the agency stated:

> Railroads are specifically required by § 214.303 to implement their own on-track safety programs. *Section 214.311 however, places responsibility with all employers (whether they are railroads or contractors) to see that employees are trained and supervised to work with the on-track safety rules in effect at the work site. The actual training and supervision of contractor employees might be undertaken by the operating railroad, but the responsibility to see that it is done rests with the employer.*

*Id.* at 65967 (emphasis added). These statements establish that the employer, not the railroad, is responsible for implementing the safety regulations.

Having applied the traditional rules of construction in our toolkit as required by *Kisor*, we conclude there is no genuine ambiguity concerning the entity that is charged with implementing the safety regulations. *Cf. Lessert v. BNSF Ry. Co.*, 476 F. Supp. 3d 926, 943–44 (D.S.D. 2020) (finding an FRA regulation unambiguous but also concluding "the FRA interpretation defendant would have the court defer to hardly contradicts the court's reading of" the regulation"). Because the two regulations apply to an employer, and the railroad was not Zdroik's employer, we reverse the denial of the railroad's summary judgment motion on the negligence per se claim and remand for entry of summary judgment in favor of the railroad.

We find it unnecessary to address the remaining arguments raised by the parties.

**REVERSED AND REMANDED.**