**James R. EISTER, Appellant,**

v.

**James HAHN, Appellee.**

No. 86–1862.

Supreme Court of Iowa.

March 16, 1988.
Rehearing Denied May 6, 1988.

Hahn (Hahn) was president of the corporation and was in charge of its daily activities. Harold Bickett was an employee of the corporation and at times supervised Eister.

At the end of a work day in October 1983 Hahn drove a combine from a standing cornfield and onto its harvested portion. Attached to the combine was a corn head, a device used in harvesting corn. Before shutting down the combine it is customary to remove cornstalks remaining on the corn head which have not run through the combine.

Bickett approached the corn head and, without stepping between the snouts of it, grabbed the cornstalks and either threw them into the auger on the corn head or put them near it on the ground. He had helped clean the corn head this way various times in the past. Although Eister contends otherwise Bickett states he did not direct Eister to assist him at this time but he did so. He had done so in the past.

No one contends Hahn told Eister to approach or clean the corn head. Hahn was still in the operating cab of the combine. He disengaged the clutch between the combine and the corn head but did not shut off the combine engine. After Bickett and Eister attempted to clean the corn head they stepped back from the machine. Hahn then engaged the corn head and attempted without success to run the cornstalks through the combine.

According to Eister he then attempted to clean the corn head a second time. As he began to step back from the machine, the clutch was reengaged and his left leg became entangled in the machine, causing the injury.

It is clear that Hahn was looking to the right at the time of the accident. Hahn states this was because he was shutting the combine down for the evening. He explains that the controls which turn off the engine are located to the right and behind the combine operator's seat.

---

Garry D. Woodward of Woodward, Davis & Rossi, Des Moines, for appellant.

Eric M. Knoernschild of Hintermeister & Knoernschild, Muscatine, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and ANDREASEN, JJ.

HARRIS, Justice.

Plaintiff (Eister) is a farm worker who brought this personal injury suit against a fellow employee, charging gross negligence under Iowa Code section 85.20.[1] The trial court directed a jury verdict in favor of the defendant. We affirm.

Eister was employed by F & J Hahn, Inc., an Iowa corporation engaged in farming near Muscatine. The defendant James

---

**1.** All references are to the Code 1985.

■ Under Iowa Code section 85.20(2) a person injured on the job cannot recover against a fellow employee unless the injuries are caused "by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." In this action Eister claims his injuries resulted from Hahn's "gross negligence."

I. Prior to directing a verdict for Hahn the trial court ruled that neither the OSHA (occupational safety and health administration) standards nor the IOSHA (Iowa occupational safety and health administration) standards are applicable in an action brought against a co-employee under Iowa Code section 85.20. Our review of that ruling is for correction of errors of law. *See Chariton Feed & Grain, Inc. v. Harder,* 369 N.W.2d 777, 782 (Iowa 1985).

Violation of IOSHA regulations is negligence per se in an action by an employee against an employer. *Koll v. Manatt's Transp. Co.,* 253 N.W.2d 265, 270 (Iowa 1977). Iowa's regulations are found in Iowa Code chapter 88. Eister contends section 88.4 makes the regulations applicable in this case. That section states:

> Each employer shall furnish to each of the employer's employees employment and a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm to the employer's employees and comply with occupational safety and health standards promulgated under this chapter.

> Each employee shall comply with occupational safety and health standards and all rules and orders issued pursuant to this chapter which are applicable to the employee's own actions and conduct.

Eister's position proceeds from the language in the second paragraph: Because OSHA regulations require that the engine be turned off, not merely that the corn head be disengaged, Hahn violated section 88.4, and the violation was negligence per se.

The guidelines for determining legislative intent are well known and need not be repeated here. *See State v. Kirklin,* 357 N.W.2d 310, 313 (Iowa 1984). The legislature stated in section 85.20 an injured employee's chapter 85 rights and remedies are exclusive. It then articulated only one exception to that rule: where the employee's injury is caused by gross negligence of another employee. We have held that gross negligence includes a conscious failure to avoid a peril. *See Taylor v. Peck,* 382 N.W.2d 123, 126–27 (Iowa 1986); *Thompson v. Bohlken,* 312 N.W.2d 501, 505 (Iowa 1981).

Clearly not every violation of an OSHA regulation amounts to gross negligence. A person can violate an OSHA regulation without consciously doing so. We should not add a second exception to section 85.20 which the legislature did not provide.

The trial court correctly concluded that our holding in *Koll* does not apply to claims brought against a coemployee. The provision in section 88.4 which requires an employee to comply with OSHA standards has only to do with actions and conduct of that employee, and are to be considered only in connection with any contributory fault or negligence in actions brought by that employee. It does not raise a duty of care between employees. Eister's contention to the contrary is without merit.

II. Eister challenges the directed verdict on one other ground. He thinks there was substantial evidence indicating that Hahn's conduct amounted to gross negligence. On this assignment we view the evidence in the light most favorable to Eister. *Pauscher v. Iowa Methodist Medical Center,* 408 N.W.2d 355, 361 (Iowa 1987). A directed verdict is proper if the claim is not supported by substantial evidence. *Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986).

In *Thompson v. Bohlken,* 312 N.W.2d at 504–05, we said: " 'wanton' conduct lies somewhere between the mere unreasonable risk of harm in ordinary negligence and intent to harm" (citing W. Prosser, *Handbook of the Law of Torts* § 34, at 183–84 (4th ed. 1971)). Quoting further from Prosser, we said:

> The usual meaning assigned to "willful," "wanton" or "reckless," ... is that the

actor has intentionally done an act of unreasonable character in disregard of a risk known to or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.

312 N.W.2d at 504–05. We said there are three elements necessary to establish "gross negligence amounting to such lack of care as to amount to wanton neglect" under section 85.20:

    1. Knowledge of the peril to be apprehended;

    2. Knowledge that injury is a probable, as opposed to a possible, result of the danger; and

    3. A conscious failure to avoid the peril.

*Id.* at 505.

The trial court found the showing of gross negligence failed on the third element (conscious failure to avoid the peril), declining to find a failure of the second element. Without deciding whether the rationale of the trial court was correct we affirm because we think there was no substantial evidence to support the second element. *See State ex rel. Miller v. National Farmers Org.*, 278 N.W.2d 905, 906 (Iowa 1979) ("Where the reason given by a trial court for its adjudication is erroneous, the adjudication will nevertheless be sustained if a separate ground, properly urged, is correct.").

■ The record is clear that Eister moved into the danger zone without being requested to do so by Hahn. He acknowledged Hahn was looking away from the danger zone and that he, Eister, made no attempt to alert Hahn that he was entering the zone.

There is no evidence that Hahn was aware that an accident was likely with the corn head disengaged while the combine engine was running. It was not Hahn's practice, or the practice of farmers in the area, to shut down the combine engine when clearing the corn head of debris. There was simply no evidence that Hahn had knowledge that an injury was probable as opposed to possible.

Both of Eister's assignments are without merit.

AFFIRMED.