Fidel HERNANDEZ; Kimberly Hernandez; and Nicole Hernandez, A Minor Child by her Father and Next Friend, Fidel Hernandez, Appellants,

v.

MIDWEST GAS COMPANY, Appellee.

No. 92–1889.

Court of Appeals of Iowa.

Aug. 25, 1994.

Gary G. Mattson of LaMarca & Landry, P.C., West Des Moines, for appellants.

Joseph G. Van Winkle of Gamble & Davis, P.C., Des Moines, for appellee.

Considered by HAYDEN, P.J., and HABHAB and CADY, JJ.

CADY, Judge.

While cutting and capping a gas pipeline, Fidel Hernandez (Fidel) became asphyxiated and suffered brain damage. At the time of his injuries, Fidel was employed by Iowa Pipeline Associates (Iowa Pipeline), an independent contractor of Midwest Gas. Fidel, his wife, and minor child brought suit against Midwest Gas and three coemployees to recover damages for his injuries. The district court granted summary judgment to Midwest Gas and the coemployees. Fidel appealed. We affirm.

Midwest Gas entered into a written employment contract with Iowa Pipeline to retire certain gas pipelines. The contract required Iowa Pipeline to maintain a safety and accident prevention program which met all federal, state, and local requirements and to supply all safety equipment. The contract allowed Midwest Gas to suspend and reinstate the execution of the work and to approve any on-site work done before sunrise or after dark. Midwest Gas employees regularly inspected the job sites. The inspectors told Iowa Pipeline employees to wear hard hats and safety glasses. Additionally, Iowa Pipeline employees were issued Midwest Gas identification cards.

Cutting and capping an underground gas line requires a person to work in a hole approximately three feet wide, three feet long, and two feet deep. A back hoe performs the initial excavation. A worker then shovels the dirt away from the gas line. Next, the pipeline is cut and a compression-fit cap is placed over the end. Gas continues to flow through the line while this procedure is performed. Respirators are not normally worn while cutting and capping in an open hole, but are used for working in confined spaces.

Fidel sustained his injuries while cutting and capping a residential gas line located approximately two feet under a drive way. Initially, a back hoe excavated a hole three feet wide, five feet long and three feet deep. Fidel climbed into the hole and cleared the dirt from around the gas line. He then reached under the concrete slab of the driveway to cut and cap the gas line. The only person present during this procedure was the back hoe operator. While in the hole, Fidel became asphyxiated by a build up of natural gas and sustained permanent brain damage.

Fidel, his wife Kimberly, and their minor child, Nicole, filed an action against Midwest Gas and three of Fidel's coemployees pursuant to several strict liability and negligence theories. Plaintiffs asserted: (1) Midwest Gas retained control over Iowa Pipeline's work and acted negligently in exercising that control; (2) Cutting and capping gas lines is inherently dangerous and subjected Fidel to a peculiar risk for which Midwest Gas negligently failed to take precautions; (3) Cutting and capping gas lines is an abnormally dangerous activity such that Midwest Gas is strictly liable; (4) Fidel's coemployees were grossly negligent in failing to prevent his injuries.

The district court granted summary judgment in favor of Midwest Gas and Fidel's coemployees. It determined Midwest Gas retained insufficient control over the employees of Iowa Pipeline to subject it to liability for a failure to exercise control with reasonable care. The court also held Midwest Gas was not strictly liable for injury resulting from the escape of nontoxic natural gas. Finally, the court concluded Fidel's coemployees had no knowledge his injury was probable.

## I. Scope of Review

Our review of a successful motion for summary judgment is for correction of errors at law. Iowa R.App.P. 4. We, like the district court, view the record in the light most favorable to the party opposing summary judgment. *Downs v. A & H Constr. Ltd.*, 481 N.W.2d 520, 522 (Iowa 1992) (citing

*Hike v. Hall,* 427 N.W.2d 158, 159 (Iowa 1988)). Summary judgment is appropriate when the entire record before the court shows there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Id.;* Iowa R.Civ.P. 237. Questions of negligence are rarely decided in a summary judgment adjudication. Iowa R.App. 14(f)(10). The threshold issue of whether the defendant owed the plaintiff a duty of care is, however, a question of law. *Sankey v. Richenberger,* 456 N.W.2d 206, 207 (Iowa 1990).

## II. Restatement Section 414

Plaintiffs first argue the district court erred in concluding Midwest Gas exercised insufficient control over Fidel's work to subject it to liability under Restatement (Second) of Torts section 414.

■ An employer of an independent contractor is not generally vicariously liable for injuries to the employee of an independent contractor arising from the independent contractor's negligence. *Downs,* 481 N.W.2d at 524; Restatement (Second) of Torts § 409 (1965). However, when an employer entrusts work to an independent contractor and retains a degree of control over any part of the work, he may be liable to the employee of the independent contractor for injuries caused by the employer's failure to exercise the retained control with reasonable care. *Id.* at 524–25 (citing Restatement (Second) of Torts § 414 (1965)).

■ The degree of control retained by the employer is the critical element in determining liability.

[T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. ' Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be . such a retention or a right of supervision that the contractor is not entirely free to do the work in his own way. Restatement § 414, cmt. c.

■ We, like the district court, find the evidence shows Midwest Gas retained insufficient control over the operative detail of cutting and capping to render it liable for Fidel's injuries. Midwest Gas inspectors inspected Fidel's work site every three hours on a rotating basis and told Iowa Pipeline employees to wear hard hats and safety glasses. They also retained the right to suspend and reinstate the execution of work. Furthermore, the Iowa Pipeline foreman reported daily activity to Midwest Gas's chief inspector of projects.

Midwest Gas did not instruct Iowa Pipeline employees on the mechanics of cutting and capping gas lines. The method of operation, including when to get in and out of the holes, remained with the Iowa Pipeline employees. In light of these facts, we find the degree of control retained by Midwest Gas falls squarely within the parameters of comment c. Therefore, as a matter of law, the evidence is sufficient to support the trial court's summary judgment decision.

## III. Strict Liability, Restatement Section 416, and Section 427

In its summary judgment order the district court determined Midwest Gas was not strictly liable for injuries sustained by Fidel as a result of escaping gas. The Plaintiffs do not appeal this ruling.

Plaintiffs' primary contention on appeal is the district court erred by applying an abnormally dangerous strict liability standard to the Plaintiff's negligence claims, based on the peculiar risk and inherent danger theories of Restatement (Second) of Torts sections 416 and 427. While we agree that the trial court incorrectly treated the peculiar risk and inherent danger theories as analogous to strict liability, we find this to be harmless error.

■ The issue presented by Plaintiffs is whether cutting and capping a live gas line located two feet under a concrete slab creates a peculiar risk or is inherently dangerous such that Midwest Gas owed a duty to Fidel under sections 416 and 427. This is a

question of law. *Lunde v. Winnebago*, 299 N.W.2d 473, 475 (Iowa 1980).

■ Restatement sections 416 and 427 are another exception to the general rule that the employer of an independent contractor is not vicariously liable for injuries arising out of the independent contractor's negligence. *Id.* They provide:

§ 416 Work Dangerous in Absence of Special Precautions.

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

§ 427 Negligence as to Danger Inherent in the Work.

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

■ Restatement sections 416 and 427 are closely related and should be read together. *Downs*, 481 N.W.2d at 526. They are different statements of the same general rule "that the employer remains liable for injuries resulting from dangers which he should contemplate at the time he enters into the contract. . . ." *Id.* (citing Restatement § 416, cmt. a.).

The difficulty in applying these sections is determining what actions constitute "a peculiar risk of physical harm" such that the risk incurred inheres in the work itself. Comment "d" under section 416 refers to comment "b" under section 413 for an explanation of the peculiar risk concept. It states:

[The "peculiar risk" exception] has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind any careful contractor could reasonably be expected to take against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor. . . .

Restatement (Second) of Torts § 413, cmt. b (1965).

In *Lunde*, the Supreme Court explained further.

If performance of work 'in its normal manner' exposes others to undue risk of harm, an employer may be held liable for the acts of the independent contractor. . . . On the other hand, if the nature of the work is such that performance of it in its usual manner would not expose others to unreasonable peril, the employer is not liable, even though acts of negligence are actually committed in the course of the job.

*Lunde*, 299 N.W.2d at 476.

■ Thus, the term means more than danger that arises from the collateral negligence of persons engaged in the activity or danger which arises solely from the method of the activities performance. *Downs*, 481 N.W.2d at 526; *see also Rodrigues v. Elizabethtown Gas Co.*, 104 N.J.Super. 436, 250 A.2d 408, 413 (1969) (holding danger of asphyxiation while working in a shallow hole is not inherent in and peculiar to a pipefitters activity).

■ In the present case, Plaintiffs argue Fidel was cutting and capping in a confined space and confined spaces create a recognized peculiar risk of physical harm for the worker. Furthermore, none of the safety regulations for confined spaces required by Midwest Gas's safety handbook were followed.

Midwest Gas disputes Fidel was working in a confined space. However, they go on to assert even if Fidel was in a confined space the type of precautions Plaintiffs claim were missing are simply "routine precautions" any careful contractor would be expected to take against the ordinary dangers which arise in

the course of cutting and capping live gas lines. Because sections 416 and 427 do not apply to taking "routine precautions" against ordinary and customary dangers, Midwest Gas concludes they owe no duty to Fidel.

While we acknowledge cutting and capping live gas lines presents a degree of risk to the worker, we agree with Midwest Gas. Under the facts of this case, cutting and capping a live gas line does not rise to the level of a peculiar risk or an inherent danger. In this case, the risk did not come from the nature of cutting and capping; rather, it arose from the manner in which the work was done. *See Downs*, 481 N.W.2d at 526. The omission of ordinary safety precautions appears to have created the danger of asphyxiation. Had Fidel lifted his head out of the hole for fresh air or had respirators and other standard confined-space safety equipment been provided, Fidel's injury might have been prevented. Any danger in this case arose merely from negligence in the operative details of the work.

## IV. Coemployee Gross Negligence

Finally, the Plaintiffs argue a genuine issue of material fact exists as to whether Fidel's coemployees, Joe Wood (Joe), Bill Bettin (Bill), and Dan Herber (Dan), knew his injury was a probable result of the danger to which he was exposed. Joe is a superintendent with Iowa Pipelines. Bill is the safety coordinator, and Dan was the foreman. Neither Joe nor Bill were present at the cutting and capping site and Dan left before the hole was dug.

Our workers' compensation statute provides an injured worker's exclusive remedy against their coemployees for injuries sustained in the course of employment, *Walker v. Mlakar*, 489 N.W.2d 401, 403 (Iowa 1992), except where the coemployees conduct constitutes "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code § 85.20(2) (1993). In *Thompson v. Bohlken*, 312 N.W.2d 501, 505 (Iowa 1981), the Supreme Court defined wanton conduct as conduct lying "somewhere between the mere unreasonable risk of harm in ordinary negligence and intent to harm.... 'The usual meaning ... is that the actor has intentional-

ly done an act of an unreasonable character in disregard of a risk known to or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.'" *Id.* at 504–05 (quoting William Prosser, *Handbook of the Law of Torts* § 34, at 185 (4th ed. 1971)).

The Court went on to enumerate the elements necessary to establish a coemployee's gross negligence. They are: (1) knowledge of the peril to be apprehended; (2) knowledge that the injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril. *Id.* at 505. This test is stringent, *Walker*, 489 N.W.2d at 405, and an injured worker must prove all of its elements to establish a coemployee's gross negligence. *Id.* at 403.

Focusing on the second element of the *Thompson* test, the district court determined Plaintiffs failed to show Fidel's coemployees had knowledge that Fidel's injury was probable.

Element two requires more than a showing of the defendant's actual or constructive knowledge of the "actuarial foreseeability" that accidents will happen. *Alden v. Genie Indus.*, 475 N.W.2d 1, 2 (Iowa 1991) (quoting *Henrich v. Lorenz*, 448 N.W.2d 327, 334 n. 3 (Iowa 1989)). Plaintiffs must show that the defendants knew their actions would place their coemployee in imminent danger, so that someone would more likely than not be injured by the conduct. *Id.*

The requisite showing of a "zone of imminent danger" can be made in two ways: (1) proving defendant's actual or constructive knowledge of a history of accidents under similar circumstances or, (2) showing a high probability of harm is manifest even in the absence of a history of accidents or injury. *Alden*, 475 N.W.2d at 2–3.

After reviewing the record, we find Plaintiffs failed to show defendants, Joe, Dan, and Bill, knew or should have known their conduct placed Fidel in a zone of imminent danger. Fidel had worked for Iowa Pipeline for three and one half years prior to the accident. He spent the majority of that time cutting and capping gas lines and had

performed the task thousands of times without incident. Moreover, he had worked uninjured on gas lines located under concrete slabs on twenty-five previous occasions. Fidel's coemployees stated they were unaware of any accident similar to Fidels during their combined fifty-seven years of experience. Fidel's experience and the low incidence of injuries gave Defendants no reason to suspect injuries would probably occur under the prevailing working conditions.

Furthermore, both Joe and Dan had previously cut and capped gas lines under a driveway without injury using the same method as Fidel. Had Defendant's known this method would probably result in injury, we doubt they would have used it themselves. *See Henrich,* 448 N.W.2d at 333.

Finally, the evidence suggests Fidel performed the cutting and capping procedure in accordance with the accepted industry standards and had never asked for any additional safety measures.

In light of these facts, we find the conditions under which Fidel cut and capped the gas line did not manifest a high probability of harm and Defendant's had no knowledge injury was probable.

We affirm the district court's decision.

**AFFIRMED.**