**IN THE COURT OF APPEALS OF IOWA**

No. 23-0289
Filed April 10, 2024

**ELISHA STOKES,**
        Plaintiff-Appellant,

**vs.**

**MARIO MURILLO,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L. Larson, Judge.

An injured worker appeals the district court's grant of summary judgment dismissing a gross-negligence claim against a coworker. **AFFIRMED.**

Thomp J. Pattermann of Law Office of Gallner & Pattermann, P.C., Council Bluffs, for appellant.

J. Scott Bardole of Andersen & Associates, West Des Moines, for appellees.

Considered by Bower, C.J., and Schumacher and Langholz, JJ.

**LANGHOLZ, Judge.**

Iowa's workers' compensation system is generally the exclusive remedy for workplace injuries. But an injured worker may sue a coworker over an injury caused by the coworker's gross negligence. Elisha Stokes was injured when he put his hand in the discharge side of a rebar-cutting machine with its safety mechanisms disabled and then his coworker, Mario Murillo, activated the machine—crushing Stokes's hand. The district court granted Murillo summary judgment and dismissed Stokes's suit over the injury, concluding that Stokes had failed to present evidence showing a material factual dispute that Murillo was grossly negligent—rather than merely negligent.

On appeal, Stokes argues that he showed fact disputes about whether Murillo was grossly negligent in two ways. But his first argument—that Murillo was grossly negligent by operating the machine at all with the safety mechanisms disabled—fails because he has shown no evidence from which a jury could find that Murillo knew that injury was probable rather than just possible from that operation. And Stokes's second argument—that he "notified Murillo of his intent to cut rebar from the exit side" and Murillo activated the machine anyway—was neither raised in, nor decided by, the district court. So he did not preserve error, and we cannot consider it. The district court thus properly granted summary judgment to Murillo and dismissed this suit. We affirm.

I.

One Saturday in April 2018, Stokes and Murillo were working for a construction supply company, fabricating metal rebar. Murillo cut the rebar with a rebar-cutting machine. And Stokes bent the cut rebar pieces to the desired angle.

The cutting machine is designed to cut a load of one or more long pieces of rebar placed on an intake conveyor to the length selected on the machine's control panel. When activated at the control panel, a clamp comes down in the machine to hold the rebar in place while shears cut it. The cut rebar then discharges on another conveyer on the opposite side. The discharge side is equipped with a safety guard that covers much of its opening but can be lifted to provide better access to the opening. And a sensor prevents the machine from activating when the guard is lifted. For reasons that are disputed—but immaterial—in April 2018 and most of the two years before, the safety guard was wired open and the sensor was disabled—so the machine would still activate despite the guard being lifted.

Besides using the machine as designed, Stokes and other employees would sometimes trim shorter pieces of rebar by manually sticking the rebar into the discharge side of the machine. While the company had other cutting or grinding tools designed for this purpose, Stokes testified that using the machine was quicker and more convenient. Putting rebar into the discharge end of the machine did not ordinarily require the worker to put his hand into the machine. And Stokes had regularly trimmed rebar by putting it in the discharge side of the machine without any issue. Indeed, no employee had been harmed by trimming rebar that way or because of the disabling of the safety guard and sensor any time during the machine's roughly two years of operation at the company.

But not so on that April Saturday. Stokes decided to trim a rebar piece through the discharge side. He noticed a small piece of rebar scrap in the machine that needed to be removed before trimming. And Stokes then put his right hand into the machine through the discharge opening to sweep it away. Murillo—who

was standing at the operating controls for the machine about to cut a new load of rebar—activated the machine while Stokes's hand was still in it. The clamp used to hold the rebar in place then lowered—pinning and crushing Stokes's hand.

The machine was stopped before the cutting shears engaged. But the clamp could not be raised off Stokes's hand. One coworker called an ambulance. Another eventually dismantled the machine to release Stokes's crushed hand. And because of the injury, Stokes suffered nerve damage that still causes chronic pain, diminished capacity of his hand, and mental-health issues.

In April 2020, Stokes sued Murillo for gross negligence.[1] Murillo moved for summary judgment, arguing that Stokes had failed to show any facts from which a jury could find that Murillo was grossly negligent. Stokes resisted, arguing that operation of the machine with the safety mechanisms disabled was gross negligence because "[t]he danger posed by having the guard and safety sensor disabled were clearly known to the employees of" the company. He also argued that because Murillo "admits he did not know where Stokes was when he activated the machine" and that "Stokes had always informed him that he was using the machine before putting his hand in," a jury could find that Murillo knew Stokes "was using the other side to cut rebar" and Murillo's activation of the machine "anyway" was "wanton conduct" and "a reckless disregard for the safety of Stokes."

In his statement of disputed facts, Stokes listed one dispute as "[w]hether Defendant Mario Murillo was aware [Stokes's] hand was in the rebar [cutting] machine when he activated the machine." And he noted the conflict between his

---

[1] Stokes also sued another coworker. But Stokes does not appeal the district court's dismissal of that claim. So we do not discuss it further.

deposition testimony—that he told Murillo he was about to put rebar in the discharge side of the machine and asked Murillo to step away from the controls and Murrillo acknowledged by putting his hands in the air—and Murillo's testimony that Stokes never notified him even though Stokes had always done so before when cutting rebar on the discharge side. But in his briefing, Stokes mentioned nothing about evidence of his notification or Murillo's acknowledgment. And he only argued that there was evidence Murillo knew Stokes was using the discharge side of the machine to cut rebar—not that Murillo knew Stokes was putting his hand in the machine.

The district court agreed with Murillo and dismissed the suit. The court reasoned Stokes's claim failed all three elements of gross negligence mainly because Stokes had presented no evidence that Murillo knew of any peril from the machine or knew that it would cause imminent danger because "the machine had been operated (in an 'as-designed' manner and otherwise) for 2 years without injuries." The court also noted that there was no evidence Murillo knew "Stokes was inserting his hand into the discharge end of the machine either (on the occasion in question or any other time)." The court did not address any implied argument from Stokes's statement of disputed facts that Stokes told Murillo, and Murillo acknowledged, that Stokes was about to put rebar into the discharge side of the machine. And Stokes did not move to reconsider, enlarge, or amend under Iowa Rule of Civil Procedure 1.904(2). Instead, he now appeals.

II.

We review a grant of summary judgment for correction of errors at law. *Hernandez v. Midwest Gas Co.*, 523 N.W.2d 300, 302 (Iowa Ct. App. 1994). Under

Iowa Rule of Civil Procedure 1.981, the district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," submitted in support or resistance of the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The nonmoving "party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). The record must be viewed "in the light most favorable to the party opposing summary judgment." *Hernandez*, 523 N.W.2d at 302. Yet our supreme court has warned, "Summary judgment is not a dress rehearsal or practice run for trial but rather the put up or shut up moment in a lawsuit, when a nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Buboltz v. Birusingh*, 962 N.W.2d 747, 754–55 (Iowa 2021) (cleaned up).

An injured worker may only sue a coworker for a workplace injury when it was "caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code § 85.20(2) (2020). Gross negligence is a high bar for a plaintiff to clear. *See Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 321 (Iowa 1992); *see also Taylor v. Peck*, 382 N.W.2d 123, 126 n.2 (Iowa 1986) (noting that the gross-negligence test "is necessarily a stringent one"). To do so, a plaintiff must show that the co-employee had: "(1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the

danger; and (3) a conscious failure to avoid the peril." *Thompson v. Bohlken*, 312 N.W.2d 501, 505 (Iowa 1981).

To resolve this case, we focus on the second element—whether Murillo had knowledge that Stokes's injury was probable rather than just possible as a result of the peril. *See Lancial v. Burrell*, No. 20-0136, 2020 WL 5650616, at *2 (Iowa Ct. App. Sept. 23, 2020) (explaining that this element "is usually determinative because it is exceptionally difficult for plaintiffs to prove that a defendant had the requisite knowledge"). The required knowledge cannot be "satisfied simply because the defendant[] knew that sooner or later, someone would be injured." *Henrich v. Lorenz*, 448 N.W.2d 327, 334 n.3 (Iowa 1989). Rather, a plaintiff must show that "the defendants knew that their conduct would place their coemployees in imminent danger, so that someone would probably—more likely than not—be injured because of the conduct." *Id.* "[K]nowledge of a history of accidents under similar circumstances" would be one way to meet that showing. *Hernandez*, 523 N.W.2d at 305. Showing that "a high probability of harm is manifest" on the face of the conduct is another. *Id.*; *see also Alden v. Genie Indus.*, 475 N.W.2d 1, 3 (Iowa 1991) (holding that operating a manlift placed in the bed of a pickup truck, without using its outriggers for stability on a windy day, and when the defendant "freely admits" it "was unsafe," is conduct where probable harm is manifest).

Stokes first argues that Murillo's gross negligence was operating the rebar-cutting machine "with the safety mechanisms disengaged." He notes that the Iowa Division of Labor cited the company—after his injury—for a safety violation based on the discharge guard being wired open. And he contends that the likelihood of

harm was clear enough that even without a history of accidents, Murillo had the required knowledge.

But Stokes fails to clear the high bar of presenting any evidence from which a jury could find that Murillo knew injury was "a probable, as opposed to a possible, result." *Thompson*, 312 N.W.2d at 505. A safety violation issued after the injury provides no support for the required knowledge when Murillo acted.[2] And as in many previous similar cases, the machine's two years of operation with the safety mechanisms disabled—and yet no injuries occurring—precludes a jury from finding that Murillo could have known operation without the safety mechanisms would probably cause an injury. *See Henrich*, 448 N.W.2d at 333–34 (holding that "low historical incidence of injuries on the butt skinner"—four injuries skinning three million pork butts in the prior year—"gave the defendants no reason to believe that injuries would probably occur under the prevailing conditions"); *Peck*, 382 N.W.2d at 128 (relying on lack of previous accidents on a punch press—despite the need to sometimes put hand in the machine to tighten a pin—in holding that insufficient evidence supported jury verdict of gross negligence over severely injured hand); *Thompson*, 312 N.W.2d at 505 (holding that the defendant could not have known machine press operated with guard improperly positioned and unsafe control switches would probably cause injury because "no injuries had occurred with this particular press in the several years [the company] had used it").

---

[2] Nor does Iowa recognize gross-negligence per se—so the mere violation of a safety regulation does not alone establish gross negligence. *See Eister v. Hahn*, 420 N.W.2d 443, 445 (Iowa 1988).

Neither has Stokes presented any evidence showing that a high probability of harm is manifest from the guard and sensor being disabled. The wired-open guard merely provided better access to the discharge opening. *Cf. Thompson*, 312 N.W.2d at 505 (holding that guard being placed "at a height sufficient to allow entry of the operator's hand" into the press was insufficient evidence of probable harm— and thus implicitly, that it did not manifest harm too). And the disabled sensor no longer prevented an errant activation while a hand or other object was placed in the machine. But the dangerous clamp and cutting shears were still inside the large machine—unlikely to injure anyone unless they placed their hand in the machine. Stokes presented no evidence that normal operation of the machine— which does not require placing a hand in the machine—with the devices disabled has a high probability of harm that anyone could see manifestly from the conduct.

Stokes also points to Murillo's admission that operating the machine when someone's hand *is in the machine* would smash the hand. But that knowledge is not the same as knowledge that operating the machine with the guard disabled would probably cause harm. And Stokes has presented no evidence that Murillo knew that Stokes was putting his hand in the machine. Not even his own testimony that he notified Murillo he was about to cut rebar goes that far.

In his appellate briefs, Stokes makes a second, broader argument based on his notification testimony. He contends that Murillo was grossly negligent by activating the machine after—according to Stokes's testimony—Stokes told Murillo he was about to cut rebar on the discharge side and to not have the machine running and Murillo acknowledged his agreement by raising his hands up to show he would not operate the machine. But Stokes did not make this argument in his

resistance to summary judgment in the district court.[3]  Even if his papers could be read to raise the issue, the district court did not decide it.  And Stokes did not seek to reconsider or enlarge the district court's decision to obtain a ruling on this theory. He thus failed to preserve this alternative theory of gross negligence for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Stokes's gross-negligence claim against Murillo fails because he has shown no evidence from which a jury could find that Murillo knew that his injury was probable rather than just possible from Murillo's operation of the rebar-cutting machine.  The district court correctly granted summary judgment to Murillo.

**AFFIRMED.**

---

[3] The closest Stokes came to advancing this theory in his briefing was his argument that "there is a dispute as to material facts conveying whether Murillo knew [Stokes] was using the other side to cut rebar and did so anyway."  But rather than pointing to Stokes's testimony that he told Murillo and Murillo acknowledged, Stokes based the argument on Murillo's testimony that "Murillo testified he can see people using the other side of the machine, yet failed to see [Stokes] and did not see [Stokes] by another machine."  Stokes mentioned the disputed testimony more directly in his statement of disputed facts—and of course it was contained in the full transcripts that he attached.  But we cannot fault the district court for not addressing these needles buried in the papers and never briefed.