# IN THE COURT OF APPEALS OF IOWA

No. 24-0517
Filed December 4, 2024

**JUANITA LAVERY, Individually and as Administrator of THE ESTATE OF JOHN LAVERY, CHELSIE GOHLMANN, and ALLISON LAVERY,**
    Plaintiffs-Appellants,

**vs.**

**STEVE CAMPBELL,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Story County, Jennifer Miller, Judge.

Plaintiffs appeal the district court's grant of summary judgment dismissing their gross-negligence claims arising from the death of a worker against his coworker. **AFFIRMED.**

Molly M. Hamilton and Steve Hamilton of Hamilton Law Firm, P.C., Clive, for appellants.

James M. Heckmann and Nathan McConkey of Huber, Book, Lanz & McConkey, West Des Moines, for appellee.

Heard by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

John Lavery was killed when the hood on a hydraulic motor test stand fell on his head while he was working the second shift at a motor manufacturer. During an earlier shift that day, another employee had reported the test stand making loud snapping noises to her acting team coordinator for that shift, Steve Campbell. And Campbell had operated the machine, determined it was working normally, and taken no further action to shut down the machine for the day. So Lavery's estate, his wife, and two adult daughters (collectively, "the Estate") sued Campbell alleging that his decision not to shut down the test stand was gross negligence that caused Lavery's death. But the district court granted Campbell summary judgment, holding that the Estate had failed to show a material fact dispute on any of the three elements of gross negligence and its claim thus failed as a matter of law.

We focus on the second element of a gross-negligence claim: whether Campbell had knowledge that Lavery's injury was probable rather than just possible. And we agree with the district court that the Estate presented no evidence from which a reasonable jury could find that Campbell had this required knowledge, particularly given that he personally operated the same test stand after the noise report—putting himself at the same risk as Lavery. Because the Estate failed to meet this element of its claim, the district court correctly granted summary judgment to Campbell. We thus affirm the district court's dismissal of the suit.

I.

Lavery worked for a small-motor manufacturer operating a hydraulic motor test stand. The test stand—one of several at the workplace—injects pressurized oil through a small motor to test it as it comes off the production line. The operating

employee, like Lavery, puts the motor being tested into the stand and connects the motor with hoses to inject the oil. The employee then lowers a hood down to enclose the motor and protect the operator from any malfunctions with the motor or hoses that might spray the pressurized oil. The test stand's hood has a safety function that will cause the descending hood to reverse course and ascend if it touches the operator during its descent. When the testing cycle is complete, the operator raises the hood, disconnects the hoses, removes the tested motor, and then starts the process over again.

On the January 2018 day that Lavery was killed during the second shift, Campbell was the acting team coordinator on the first shift for the same motor-production line on which Lavery worked. Campbell's duties as a team coordinator included assigning tasks to other employees, troubleshooting issues, and entering work orders for equipment if needed. While Campbell was in a meeting—a little before 1:00 p.m.—the employee operating the test stand on his shift heard the stand make "a loud snapping sound" that was "almost like a tree branch snapping" or a "loud little pop" "of a .22 being shot off" while the hood was descending. She also saw the hood "jolt a little bit." The employee—who was on her second day on the job—"didn't want to touch [the test stand] anymore." So she shut it down.

When Campbell returned around 1:45 p.m., he was upset that the employee had shut down the test stand and caused a backup of the production area. The parties dispute exactly what the employee told Campbell and how he reacted. But the Estate presented evidence that she told him that she heard a snap and saw the hood jolt and that Campbell yelled at the employee, called her a vulgar name, and swore at her to get out of his way.

It is undisputed that Campbell then turned the test stand back on and operated it himself.[1] As he tested motors with the test stand, he did not hear any unusual noises and it worked as normal. He thus concluded that the test stand did not need maintenance and did not request any for it. Campbell's shift ended at 2:00 p.m., and he left the workplace about thirty minutes later without having any contact with Lavery.

Lavery's shift began at 2:00 p.m. For about two hours without incident, he operated the same test stand that Campbell had restarted and successfully operated at the end of the first shift. But then, when Lavery was leaning into the test stand with the hood open, the hood's lifting mechanism failed. The hood fell, striking Lavery in the head. Lavery was taken to a hospital and pronounced dead.

An Occupational Safety and Health Administration investigation of the cause of the accident revealed that the hood's arm-lifting mechanism had dislodged from the test stand causing it to not rise when it made contact with Lavery. Other parts of the test stand that had broken off were found in and around the machine.

The Estate sued Campbell alleging that his decision not to shut down the test stand was grossly negligent and caused Lavery's death.[2] Four years later,

---

[1] The parties dispute whether Campbell acted under direction from his supervisor in restarting the test stand. Taking the facts in the light most favorable to the Estate, we assume he did not.

[2] The Estate also brought a gross-negligence claim against Campbell's supervisor and a products-liability claim against the manufacturer of the test stand. The district court dismissed the claims against both those defendants on summary judgment before Campbell moved for summary judgment. The Estate did not appeal the dismissal of the claims against the supervisor. And we affirmed the dismissal of the claims against the test stand's manufacturer. *See Lavery v. Ren Testing Corp.*, No. 21-1778, 2022 WL 17481866 (Iowa Ct. App. Dec. 7, 2022).

after extensive discovery, Campbell moved for summary judgment, arguing that the Estate lacked any evidence to create a genuine issue of material fact on any of the three elements of gross negligence. The Estate resisted summary judgment, submitting deposition testimony and other documentary evidence that it contended creates material factual disputes. And Campbell filed a reply brief and a separate document it captioned as a "rebuttal" to the Estate's response to Campbell's statement of undisputed facts and the Estate's statement of additional material facts, which provided specific argument and citation to the record as to why the Estate's response was not supported by admissible evidence. The Estate then moved to strike this rebuttal, contending it was unauthorized by our rules of civil procedure.

After hearing arguments, the district court granted Campbell's motion for summary judgment. The court agreed that the Estate had failed to raise a genuine issue of material fact on any of the three required elements of gross negligence. It reasoned the Estate had not presented evidence that "Campbell had actual knowledge of the peril that caused Mr. Lavery's death." Nor had the Estate shown any basis for a jury to find that Campbell knew that his conduct would probably, rather than just possibly, place Lavery "in imminent danger," particularly when "the parties agree Mr. Campbell stepped in and performed the same task on [the test stand] that Mr. Lavery did a brief time later." And finally, the court concluded the Estate had "not raised a genuine issue of material fact as to whether Mr. Campbell acted with a conscious failure to avoid the peril." The court did not rule on the motion to strike because it concluded the Estate had waived it by failing to address it in the summary-judgment hearing. The Estate now appeals.

II.

We review a grant of summary judgment for correction of errors at law. *Hernandez v. Midwest Gas Co.*, 523 N.W.2d 300, 302 (Iowa Ct. App. 1994). Under our rules of civil procedure, the district court must grant such a motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" provided in support or resistance of the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The nonmoving "party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). The record must be viewed in "the light most favorable to the party opposing summary judgment." *Hernandez*, 523 N.W.2d at 302. But even so, "[s]ummary judgment is not a dress rehearsal or practice run for trial but rather the put up or shut up moment in a lawsuit, when a nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Buboltz v. Birusingh*, 962 N.W.2d 747, 754–55 (Iowa 2021) (cleaned up).

Iowa's workers' compensation system is generally the exclusive remedy for workplace injuries and deaths. *See* Iowa Code § 85.20 (2019). The estate of a worker killed by a workplace injury may only sue a coworker when the injury was "caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." *Id.* § 85.20(2). The same holds true for claims for loss of consortium by family members of the deceased worker. *See Johnson v. Farmer*, 537 N.W.2d 770, 773 (Iowa 1995).

These gross-negligence claims are purposefully difficult for plaintiffs to win. *See Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 321 (Iowa 1992); *see also Taylor v. Peck*, 382 N.W.2d 123, 126 n.2 (Iowa 1986) (noting that the gross-negligence test "is necessarily a stringent one"). To do so, they must show that the co-employee had: "(1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril." *Thompson v. Bohlken*, 312 N.W.2d 501, 505 (Iowa 1981).

As in most cases, the second element—whether Campbell had knowledge that Lavery's injury was probable rather than just possible—is dispositive here. *See Lancial v. Burrell*, No. 20-0136, 2020 WL 5650616, at *2 (Iowa Ct. App. Sept. 23, 2020) (explaining that this element is typically "determinative because it is exceptionally difficult for plaintiffs to prove that a defendant had the requisite knowledge an injury was probable, rather than possible, under the circumstances"). To satisfy this element, the Estate cannot merely show that Campbell "knew that sooner or later, someone would be injured." *Henrich v. Lorenz*, 448 N.W.2d 327, 334 n.3 (Iowa 1989). It must instead show that Campbell "knew that [his] conduct would place [his] coemployees in imminent danger, so that someone would probably—more likely than not—be injured because of the conduct." *Id.* One way the Estate could make this showing is evidence of "knowledge of a history of accidents under similar circumstances." *Hernandez*, 523 N.W.2d at 305. Another would be by showing that "a high probability of harm is manifest" on the face of the conduct. *Id.*; *see also Alden v. Genie Indus.*, 475 N.W.2d 1, 3 (Iowa 1991) (holding that operating a manlift placed in the bed of a

pickup truck, without using its outriggers for stability on a windy day, and when the defendant "freely admits" it "was unsafe," is conduct where probable harm is manifest).

The district court correctly concluded that there is no evidence in the summary-judgment record from which a jury could find that Campbell knew Lavery's injury was probable rather than just possible.[3] The Estate presented no evidence of any previous injuries from the test stand Lavery was operating—or any of the others at the workplace. Nor do we see any basis in the record to conclude that the continued use of the test stand after an isolated unusual noise that did not repeat when Campbell operated the test stand—or merely the heavy weight of the test-stand hood—manifests a high probability of harm on its face.

What's more, the undisputed evidence that Campbell operated the test stand himself after being told of the noise shows that he did not know injury would probably result from its operation. *See Hernandez*, 534 N.W.2d at 306 (holding that defendants "had no knowledge injury was probable" where they engaged in the same conduct that injured plaintiff, reasoning that had they "known this method would probably result in injury, we doubt they would have used it themselves"); *Henrich*, 448 N.W.2d at 333 ("We also think it significant that many of the defendants themselves had operated the butt skinner under the same conditions

---

[3] At oral argument, the Estate raised a concern that the district court did not consider two videos showing how the test stand operates that the Estate referenced in its statement of disputed facts but apparently were not received by the district court. But these videos are not in the summary-judgment record or the record on appeal. *See* Iowa R. App. P. 6.801. Even if they had been admitted, the facts for which the Estate relies on them were not disputed by Campbell. And we, like the district court, accept those facts in analyzing the summary-judgment record.

and with the same instructions Henrich complains of here."). The Estate contends that Campbell was not operating the test stand "in the same way" as Lavery because Campbell was "ruling out a potential danger" while Lavery had "no idea that a potential danger might exist." But Campbell ruled out the danger by testing motors in the test stand—same as Lavery did during the next shift for two hours before the accident. And in any event, given this undisputed evidence that he heard and saw no problem while operating the test stand, no reasonable jury could find that Campbell *knew* that an injury was probable and imminent.[4]

The Estate argues that a "near-miss" incident on a different test stand a year and a half before still offers a basis to find that Campbell knew injury was probable. There, a mechanical failure caused the hood of a similar test stand to unexpectedly fall and almost hit a worker. The incident caused the employer to inspect other test stands, including the one operated by Lavery and the test stand that failed was still not being used when Lavery's accident occurred.[5] But

---

[4] Campbell also argues that his lack of contact with or supervision of Lavery and the hour-and-a-half delay between his departure from the workplace and the accident show Campbell lacked knowledge of any imminent danger to Lavery. Because the Estate's claim fails for other reasons, we do not decide whether this attenuation argument could also defeat the gross-negligence claim.

[5] Campbell argues that the district court should not have considered this or much of the Estate's other documentary evidence because it was submitted without a supporting affidavit. *See* Iowa R. Civ. P. 1.981(5) (providing that summary judgment may be resisted "by depositions, answers to interrogatories, further affidavits, or oral testimony," and requiring affidavits to be "made on personal knowledge," stating "facts as would be admissible in evidence," and attaching "[s]worn or certified copies of all papers or parts thereof referred to in [the] affidavit"). Like the district court, we conclude that summary judgment is proper even considering this challenged evidence, so we do not decide whether it would have been proper to ignore this evidence in ruling on the summary-judgment motion or if we could do so for the first time on appeal without giving the Estate a chance to refile its summary-judgment resistance with affidavits laying the foundation for its evidence.

assuming Campbell knew all this, it still does not show he knew injury was probable on the test stand. To start, the "near-miss" incident did not cause an injury. And regardless, an isolated failure of a hood on a similar stand—even if showing that an injury is theoretically possible on this stand—is not enough to support a jury finding that an injury is probable on this stand, particularly when no other failures had occurred on any of the test stands since that single failure more than a year before. *See Henrich*, 448 N.W.2d at 333–34 (holding that "low historical incidence of injuries"—four injuries skinning about three million pork butts in the prior year— "gave the defendants no reason to believe that injuries would probably occur under the prevailing conditions"); *Thompson*, 312 N.W.2d at 505 (holding that evidence was insufficient for jury to find that the defendant knew injury would be probable "even though other injuries had occurred in other [of the employer's] presses" because "none had occurred under similar circumstances and no injuries had occurred with this particular press in the several years [the employer] had used it").

The Estate also argues that a fact dispute over whether Campbell talked to his supervisor about the test stand and acted with the supervisor's direction in restarting the test stand precludes summary judgment. And true, there appears to be some conflicting evidence on this point. But the district court did not improperly resolve the conflict. Nor do we need to. Even viewing the evidence in the light most favorable to the Estate and assuming Campbell did not act with his supervisor's direction, that does not show he knew of a probable injury. At best, it shows mere negligent conduct in failing to take a step a reasonable person would have. That is not gross negligence. *See Thompson*, 312 N.W.2d at 505 (holding

that evidence was insufficient to support gross negligence when the most it established was "a want of ordinary care").

In sum, the Estate's gross-negligence claim against Campbell fails because it presented no evidence from which a jury could find that Campbell knew that injury was probable rather than just possible. The district court correctly granted summary judgment to Campbell and dismissed the case.

**AFFIRMED**.